**Yvonne BAILEY, Individually and as Guardian for Derran E. Bailey, a minor, Della Arnett, Guardian of Jacqualine Arnett, a minor and Della Arnett, Administratrix of the Estate of Wilma Jean Arnett, Deceased, Plaintiffs-Appellees,**

**v.**

**PRUDENCE MUTUAL CASUALTY COMPANY, a Corporation, Defendant-Appellant.**

**No. 17999.**

United States Court of Appeals, Seventh Circuit.

June 26, 1970.

Rehearing Denied Sept. 28, 1970.

Harold W. Huff, Jerald P. Esrick, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for appellant.

Philip E. Howard, William J. Harte, Chicago, Ill., for appellees.

Before Honorable TOM C. CLARK, Associate Justice, Supreme Court of the United States, Retired, F. RYAN DUFFY, Senior Circuit Judge and ROGER J. KILEY, Circuit Judge.

---

1. 18 U.S.C.A. § 3568.

2. Pursuant to our Rule 18 this case is decided without oral argument.

DUFFY, Senior Circuit Judge.

Prudence Mutual Casualty Company (Prudence) issued an automobile insurance policy to Donzella Goodall. The policy was in conventional form and provided coverage against legal liability arising from the operation of a designated automobile owned by the named insured.

Uluss Goodall was the husband of Donzella Goodall, and was an additional insured under the policy. By an endorsement, the policy provided uninsured motor coverage to all persons riding in the automobile.

The plaintiffs in this suit are persons who suffered personal injuries as the result of an automobile collision occurring within the State of Indiana in 1964. Uluss Goodall was driving the automobile which collided with an automobile in which the plaintiffs were passengers.

In the original tort action, plaintiffs sued Uluss Goodall for damages. The judgment in that case in favor of the plaintiffs totalled $60,000. The limit of the insurance coverage was $20,000.

Subsequently Goodall who was personally liable for the $40,000 judgment in excess of the policy limits, assigned to the plaintiffs his right of action against defendant Prudence for its alleged negligence and bad faith in the representation and protection of Goodall in the suit for personal injuries.

The instant case was tried before a jury which rendered a verdict favorable to plaintiffs and judgment was entered thereon. Motions by defendant for a judgment n.o.v. and for a new trial were denied.

About one and a half months thereafter, defendant raised, for the first time, the question of jurisdiction, claiming the assignment of the cause of action was a "subterfuge" and was for the sole purpose of providing jurisdiction, pointing out that both Goodall and Prudence were residents of the State of Illinois.

At no time during the lengthy proceedings before and during the trial of this case did Prudence suggest or allege that the purpose of the assignment was to vest jurisdiction in the federal courts.

■ There is nothing inherently wrong in the assignment of a cause of action. In fact, the assignment technique has frequently been used for prosecuting "bad faith refusal to settle" claims. Witness such cases as: Crisci v. Security Insurance Company, 66 Cal. 2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); Bench v. State Automobile and Casualty Underwriters Inc., 67 Wash.2d 999, 408 P.2d 899 (1965).

Goodall was in court throughout the first trial until he was told by Prudence's counsel to leave prior to the time the jury returned its verdict. Goodall made several inquiries of Prudence's counsel but was given no information. Finally when he was informed of the amount of the verdict, the time had expired for post-trial proceedings and also the time for filing a notice of appeal had expired. It was then that Goodall employed attorney Shafran to make an investigation.

Attorney Shafran learned that the Goodalls were both employed, and owned a six-flat building which was valued in excess of $60,000. He then contacted plaintiff's counsel to see if something could be worked out. Finally, the assignment of the cause of action was effected. The consideration given was that there would be no proceedings against the Goodalls until after the claim against Prudence would be finalized. Shafran explained to the Goodalls that if they did not agree to the assignment, plaintiffs could levy on their property. Upon Shafran's advice, the Goodalls signed the assignment. An appropriate order suspending an execution of the judgment was entered.

It was understood that any recovery in the Prudence matter would go toward payment of the judgment and any excess would be paid to the Goodalls.

■ It is clear that there was consideration for the assignment of the cause of action. The Goodalls were faced with the possible loss of a life's savings if a

levy were to be made on their property. On the other hand, the plaintiffs avoided the complexity of the enforcement of the excess judgment against an individual property owner. Furthermore, after the assignment, they would be in control of the litigation against Prudence.

We find there is no merit for the belated argument of Prudence that the purpose of the assignment was to invoke federal jurisdiction. We hold that consideration for the assignment did exist, and that there was no "subterfuge" present as charged by Prudence.

Defendant's reliance on Kramer v. Caribbean Mills, 394 U.S. 823 (1969) 89 S.Ct. 1487, 23 L.Ed.2d 9 is misplaced. In *Kramer,* the plaintiff had assigned the cause of action for $1.00 and had agreed to pay to the assignor 95% of the net recovery "solely as a bonus." Kramer also admitted that the assignment was motivated substantially by the desire to create diversity jurisdiction. In the case at bar, the Bailey group had a real interest in the cause of action from its inception.

■ We turn now to the question of whether there was substantial evidence to support the jury's finding of bad faith by Prudence. Prudence was presented with a claim against its insured which clearly exceeded the limits of its policy. Nearly everyone associated with Prudence who had any contact with the claim and lawsuit, recognized that any verdict for damages, if obtained, would run into a high figure. The trial counsel for Prudence who was the man most familiar with the case, evaluated the potential verdict range as high as $250,000.

At the time of the first trial, it was the procedure, adopted by Prudence, that the only person who could authorize a settlement of a claim for Prudence, was the claim manager Mettger who was not an attorney. He made his determination as to proposed settlements in this case in 1965, the year when he began his career in claims. He determined that there was no liability on Goodall's part. He never attempted to negotiate thereafter.

On four separate occasions, settlement offers were transmitted to Mettger, all of them within the policy limits. However, Mettger declined them all.

Shortly after the inception of the suit, Prudence advised Goodall that it would not be necessary for him to retain separate counsel. He did not do so, but depended on Prudence's attorney.

Prudence promised that it would defend the entire action on his behalf; also, that it would "* * * keep in touch with the progress of this litigation." Prudence also advised "* * * in defense of our mutual interest it will be necessary that we communicate with you from time to time. * * *"

But, on the contrary, Prudence never advised its insured of the various offers to settle at a figure substantially lower than the policy limits. On this score alone, liability might be established. Olympia Fields Country Club v. Bankers Indemnity Ins. Co., 325 Ill.App. 649, 60 N.E.2d 896, 905–906 (1945); Young v. American Casualty Company, 416 F.2d 906 (2 Cir., 1969).

We have held "* * * that in investigating, defending, considering questions of settlement, and on the question of appeal, the insurance company must give the interests of the insured equal consideration with its own interests and it must in all respects deal fairly with the insured." Ballard v. Citizens Cas. Co., 196 F.2d 96, 102 (7 Cir., 1952).

In *Ballard, supra,* at page 102, we quoted with approval from American Fidelity & Casualty Co., Inc. v. G. A. Nichols Co., 173 F.2d 830, 832 (10 Cir., 1949) " 'When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fidu-

ciary relationship between it and the insured with the resulting duties that grow out of such a relationship. Under policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith.' " We think the foregoing quotation is good law today.

We hold the assignment of the cause of action hereinbefore described was valid and that the District Court had jurisdiction to hear the case.

We further hold that under the totality of the circumstances hereinbefore narrated, Prudence acted in bad faith and violated its fiduciary relationship with its insured.

Prudence urges there was an error in the explanation the Judge gave to the jury explaining the reason for a certain ruling on evidence. No objection to such statement was made. We conclude that giving same was not a reversible error.

Prudence also claims error as to an instruction which was requested by Prudence except for a phrase added thereto by the Court. Again, no specific objection to this phrase was made at the time it was given. We hold this was not error.

We also hold that the exclusion of evidence about Goodall's uninsured motorist claim was not error.

The verdict of the jury was abundantly supported by the evidence. We find no reversible error resulting from several rulings by the trial judge.

The judgment appealed from is

Affirmed.