**Marie DiLALLO and Nicholas DiLallo, Plaintiffs,**

v.

**The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant.**

**No. 69 Civ. 3480.**

United States District Court,
S. D. New York.

Jan. 10, 1973.

Nathan Baker, Hoboken, N. J., for plaintiffs.

James M. Leonard, New York City, for defendant.

ROBERT L. CARTER, District Judge.

## MEMORANDUM OPINION

### Background

The present action is the third in a series of suits by the same plaintiffs against various defendants.

In 1962 Mr. and Mrs. DiLallo (inasmuch as they initiated all actions to be discussed, no confusion will result from merely designating them "plaintiffs"), residents of New Jersey, brought a diversity action in this Court against Gregorio Medina, a New York citizen, and Dora Commaliato (62 Civ. 2622). Mrs. DiLallo was a passenger in a car, driven by Commaliato, when it collided with a car driven by Medina. She sued both for personal injuries on the grounds of negligence. Mr. DiLallo joined that suit claiming injury as a result of loss of services.

In April, 1966 the case was tried before a jury. The defendant Medina was represented by attorneys of the Fidelity and Casualty Company (the defendant in the case at bar), a New York corporation. The jury returned a verdict of $13,000.00 in favor of the plaintiffs against both defendants. Each defendant was assessed $6,500.00. In an endorsement dated June 9, 1966 to post trial motions submitted by the parties, Judge Cooper set aside the verdict on the grounds that the "jury's verdict does not comport with a proper determination based on the total evidence adduced and the law applicable thereto." Although the Court explicitly refused to grant judgment n. o. v. in favor of Commaliato releasing her from liability, it stated that the "verdict [as to Commaliato] is against the weight of the credible evidence."

Prior to the time of the second trial of this first action the plaintiffs' attorney contacted Medina's attorney and offered to discontinue the case as to Medina for a settlement of $10,000.00, the limit of Medina's insurance coverage. The offer was ignored. The offer was renewed at the second trial and again ignored. The jury returned a verdict against Medina alone, and judgment of $29,300.00 was entered on October 26, 1968. The insurance company paid $10,000.00, plus interest and costs (the limits of its coverage), leaving Medina responsible for the unsatisfied judgment of $19,300.00

Subsequently plaintiffs began an action against Medina and Fidelity as co-defendants (68 Civ. 1012), alleging in substance that Medina had been damaged to the extent of his unpaid judgment by Fidelity's refusal to settle. Plaintiffs, as Medina's judgment creditors, claimed a beneficial interest in Medina's rights against Fidelity. The action was dismissed by Judge Murphy in a memorandum opinion and order dated May 14, 1969, for failure to state a proper cause of action.

Finally, the present action was commenced wherein plaintiffs, *as Medina's assignees*, now assert Medina's legal rights against the defendant. The defendant has moved to dismiss the case, pursuant to 28 U.S.C.A. § 1359, on the grounds that the assignment to plaintiffs is collusive and undertaken solely to invoke the jurisdiction of the federal courts. The defendant raises in his papers, although no formal motion was directed to this issue, the validity under state law of an assignment of a cause of action against a carrier for failure to settle. In the alternative the defendant asks for a protective order limiting the number of its employees which may be deposed by the plaintiffs.

*The Claim of Collusion to Invoke Federal Jurisdiction*

■ Defendant relies on 28 U.S.C.A. § 1359, which provides:

"A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

The plaintiffs allege that prior to the initiation of this current lawsuit (and after the dismissal of the second action) they issued income execution against Medina's salary in an attempt to satisfy the judgment running against him in their favor. Medina's employer, an attorney, sought out the plaintiffs' lawyers and attempted to arrange a settlement satisfactory to Medina. It was finally agreed that in consideration of Medina's assignment of his rights against the defendant insurance company, the plaintiffs would not execute a levy on Medina's salary.

The United States Supreme Court in Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), read 28 U.S.C. § 1359 as prohibiting an assignment executed for the purposes of creating diversity of citizenship and thereby bringing the case before the federal courts. Although the Court did not discuss at length the factors which would bring an assignment within the proscription of § 1359, it indicated that the fact that the assignee had no previous connection with the case and would return to the assignor 95% of any judgment recovered, *Id.* at 827, 89 S.Ct. 1487, where factors that led to its conclusion that the assignment was within the statute's ban.

Bailey v. Prudence Mutual Casualty Co., 429 F.2d 1388 (7th Cir. 1970) was decided upon facts almost identical with those here considered. In that case the judgment debtor (Medina's counterpart) assigned a cause of action against his insurance carrier after the possibility of judgment execution became real. The Court said—

"It is clear that there was consideration for the assignment of the cause of action. The Goodalls were faced with the possible loss of a life's savings if a levy were to be made on their property. On the other hand, the plaintiffs avoided the complexity of the enforcement of the excess judgment against an individual property owner. Furthermore, after the assignment they would be in control of the litigation against Prudence." *Id.* at 1389–1390.

The Court, therefore, concluded that the statute had not been violated by the assignment and that the jurisdictional prerequisite of diversity had been properly established.

Here the defendant has failed to present any concrete facts to demonstrate the collusion alleged. Rather the motion is supported by a bare allegation of impropriety. On the other hand, the plaintiffs have offered a reasonable and uncontradicted explanation of the assignment transaction. The Court concludes that federal jurisdiction is properly invoked, and the defendant's motion to dismiss for collusive assignment is denied.

*The Claim That the Assignment is Void Under New York Law*

■ It is conceded by both parties and accepted by the Court that the ap-

plicable law to be applied is the law of the State of New York. Defendant, of course, does not admit that the circumstances of this case justify recovery on behalf of its insured, but it concedes that the legal theory under which suit is brought is not frivolous on its face. An action against the carrier for failure to settle a pending lawsuit has long been recognized in New York. Best Building Co., Inc. v. Employer's Liability Assur. Corp., Ltd., 247 N.Y. 451, 160 N.E. 911 (1928) and see extensive analysis of New York law on this point in Brown v. United States Fidelity & Guaranty Co., 314 F.2d 675 (2d Cir. 1963).

The suggestion of state invalidity arises however by virtue of the fact that it is not the insured who is now suing the carrier but rather the insured's assignees. The assignability of a cause of action in New York is governed by the General Obligations Law § 13–101 (McKinney's Consol.Laws, c. 24–A, 1964) which states:

"Any claim or demand can be transferred, except in one of the following cases:

1. Where it is to recover damages for a personal injury;

2. Where it is founded upon a grant, which is made void by a statute of the state; or upon a claim to or interest in real property, a grant of which by the transferrer, would be void by such a statute;

3. Where a transfer thereof is expressly forbidden by a statute of the state, or of the United States, or would contravene public policy."

No New York decision has yet determined the propriety of an assignment of a cause of action against an insurance carrier for failure to settle a pending lawsuit. Therefore the task of the Court is to seek to project what that de-

cision would be. The critical determination is whether the assignment is one "for personal injury,"[1] and therefore non-assignable under § 13–101.

■■ It might be well to begin by noting that § 13–101(1) does not preclude the assignment of all tort actions: that is to say, the personal injury action is only a subclass of all tort actions— "personal injury" has not been defined as synonymous with "tort." Thus New York has permitted the assignment of an action for conversion, Richtmeyer v. Remsen, 38 N.Y. 206 (1868); fraud and deceit, Appliance Investment Co. v. American Tel. & Tel. Co., 23 N.Y.S.2d 27 (Sup.Ct.1940), aff'd., 262 A.D. 832, 29 N.Y.S.2d 509 (1941); and damage to property resulting from nuisance, Mahoney v. Ogden, 6 A.D.2d 711, 174 N.Y.S. 2d 623 (1958).

The defendant in support of its claim that the assignment here under consideration is invalid, invokes the rule of Dillingham v. Tri-State Ins. Co., Inc., 214 Tenn. 592, 381 S.W.2d 914 (1964). It was made clear, however, that the *Dillingham* decision was mandated by Tennessee law which prohibited (except for narrow statutory exclusions) the assignment of actions *ex delicto*: actions sounding in tort. Thus, once it classified the insured's action as tortious, the assignment was *ipso facto* non-assignable. However, even if it were to be accepted that the action is in the nature of a tort, it does not follow that New York law would prohibit its assignment. Thus, defendant's reliance on *Dillingham* is inappropriate.

Harris v. Standard Accid. Ins. Co., 297 F.2d 627 (2d Cir. 1961), cert. denied, 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed. 2d 847 (1962), the only other case relied upon by defendant, is similarly unhelpful. There the issue was whether an insured's trustee in bankruptcy could sue

---

1. There has been no claim that the assignment in question violates any other subsection of § 13–101. Indeed the only other possible argument is that this assignment "contravene[s] public policy." § 13–101(3). The New York Courts have

revealed no inclination to define "public policy" in such a way as to preclude the type of assignment here under consideration. See, *e. g.*, Bowery National Bank v. Wilson, 122 N.Y. 478, 25 N.E. 855 (1890).

an insurance carrier for refusal to settle. The Court disallowed the action solely on the grounds that no damages against the insured had been proved. The Court specifically refused to consider the nature of the cause of action but rather "assum[ed] *arguendo* that the plaintiff has otherwise made out a sufficient case for recovery." *Id.* at 630. The passing characterization of the action as a tort in the opinion, without citation or discussion, is purely *dicta* and not binding on this Court. Again, let me underscore the point, if the action is found to be a tort, that alone does not suffice to render the assignment invalid under New York law.

As has been noted above, the New York Courts have not as yet decided the issue now under consideration. Moreover there is no clear pronouncement by the state courts as to whether this action sounds in contract or tort. Given the novelty of the question and the consequent necessity for this Court to formulate a coherent theory of state law without the benefit of state court determination, I find it essential for purposes of determination of the motion to decide only whether this action is one for "personal injuries" within the meaning of General Obligations Law § 13–101.

On that score the Court is reasonably confident that however else the instant cause may be described, it is *not* one for personal injuries. The damages suffered by the insured are pecuniary in nature. Because of the failure of defendant to settle, plaintiffs' assignor was subjected to personal pecuniary liability.

The California courts have concluded that such a cause of action is assignable notwithstanding local law prohibiting assignability of causes "founded upon wrongs of a purely personal nature." Brown v. Guarantee Insurance Company, 155 Cal.App.2d 679, 319 P.2d 69 (1957). That decision was expressly adopted by the California Supreme Court as a proper determination of state law. See Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 328 P.2d 198, 202 (1958) where the Court said that an "action for damages in excess of the policy limits based on an insurer's wrongful failure to settle is assignable whether the action is considered as sounding in tort or in contract [citing *Brown*]."

Merely because the original action by the DiLallos' evolved out of a personal injury action does not mean that the insured's subsequent cause of action for failure to settle can be labeled as "personal injury." This principle was made clear as early as 1857 in Quin v. Moore, 15 N.Y. 432. There the New York Court of Appeals was faced with the question of the validity of an assignment of a wrongful death action. The Court concluded that notwithstanding the fact that the action derived from the personal injuries of the deceased, a wrongful death action is a statutorily created cause, independent of the injuries inflicted upon the deceased. The wrongful death action was deemed to be a "pecuniary right; a right having the essential attributes of property . . ." *Id.* at 436. That rationale of *Quin* is clearly apposite in considering the nature of the instant action.

An even closer analogy is In re Kreloff, 65 Misc.2d 692, 319 N.Y.S.2d 51 (Sup.Ct.1971). There in an action to recover against an insurance carrier for failure to defend an action, it has held that the insured's "right of action is a property right." The same result must be reached as to a cause of action for failure to settle a pending claim. The cause of action here is, therefore, either a pecuniary right and/or a property right, and assignment is therefore permissible under New York law.

*Request for Protective Order*

Defendant requested a protective order, pursuant to Rule 26(c), prohibiting the plaintiffs from deposing the large number of defendant's employees which have been currently noticed for examination. That matter was disposed of by the Court when the parties appeared for oral argument. In order that there be no misunderstanding, those directives will be repeated here. The defendant is

directed to produce the documents in its files, pertaining to the policy of Gregorio Medina, which have been requested by plaintiffs. The defendant will make available for deposition Mr. William J. Wright, defendant's Claims Manager, and the official within the New York office who has responsibility for the files which have been ordered to be produced. Inasmuch as Mr. Wright has been deposed, further examination is permissible only insofar as it pertains to documents not available on the occasion of his prior deposition.

Settle Order.