Glenese OPPEL, as Assignee of Antonio DiGangi and Giovanni DiGangi, and Glenese Oppel, on Behalf of her infant son, Kenneth Oppel, Plaintiffs,

v.

EMPIRE MUTUAL INSURANCE COMPANY, All-City Insurance Company and Raymond J. MacDonnell, Defendants.

No. 81 Civ. 2675.

United States District Court,
S. D. New York.

July 16, 1981.

Abbott & Bushlow, Ridgewood, N. Y., for plaintiffs; Bruce E. Bushlow, Ridgewood, N. Y., of counsel.

Martin K. Kahn, Brooklyn, N. Y., for defendants.

OPINION

EDWARD WEINFELD, District Judge.

This is a "bad faith" action brought against an insurer for alleged failure to settle a claim arising out of an automobile accident in which its insured was involved for an amount within the limits of the policy. The policy limit was $10,000. Upon a trial, the injured, who was an infant, recovered a judgment against the insured in the sum of $420,850.25. The assured thereafter assigned his "bad faith" claim to the plaintiff guardian of the infant who recovered the judgment.

The defendants, the insurance company and its subsidiary, and the attorney who was designated by the insurance company to appear for and represent the insured (who is sued for malpractice), move to dismiss on several grounds: (1) that, because the companies were under rehabilitation by the State Superintendent of Insurance, the Superintendent "called the shots" and hence is an indispensable party to this action; (2) that the assignment of this cause of action was collusive and for the purpose of creating diversity jurisdiction in violation of 28 U.S.C. § 1359; (3) that the second cause of action, which seeks punitive damages, is a tort action and hence unassignable under N.Y.General Obligations Law § 13–101; and (4) that the malpractice action is a tort action and hence unassignable under § 13–101.

Plaintiff's son was struck by a car driven by the insured and suffered very severe injuries that required extensive surgery and hospitalization over an extended period. On July 13, 1976, plaintiff, who was advised of the $10,000 limit under the policy, made an offer to the insurer to settle for the full amount of the policy. According to the affidavit of her attorney, the defendants' response indicated a willingness to settle if it could "save a little on the policy, somewhere in the vicinity of $500." Plaintiff alleges that this proposal, as well as subsequent conduct, in refusing to settle, in view of the severity of the injuries and the great likelihood that the infant would recover even if the infant contributed to the accident, was in bad faith. The case went to trial in May 1979 and the jury found damages in the sum of $600,000 and also that the infant plaintiff was 30% contributorily negligent, which resulted in a net judgment already referred to. Thereafter, the insured executed a written assignment of his claim against the insurance company to the plaintiff.

This action by plaintiff, as assignee of the insured under the policy, is for bad faith of the insurance company in rejecting the offer to settle the case for the $10,000 limit of the policy to the detriment of the insured who thereafter was cast in liability in a very substantial sum beyond the policy limit. This cause of action is recognized in New York. Bad faith by the insurer would include: (1) a failure to investigate; (2) a refusal to settle within the policy limits; (3) failure to inform the insured of a compromise offer; and (4) failure to induce the insured to contribute.[1]

The defendants attack the complaint with two different types of theories based upon the assignment of the claim to plaintiff. First, defendants contend that the assignment was collusive to create diversity jurisdiction in violation of 28 U.S.C. § 1359. For this purpose, the validity of the assignment is determined as a matter of federal, not state, law because a matter of federal subject-matter jurisdiction is involved.[2] Here, the assignment was not collusive. In *Kramer*, collusion was found where the assignee had no prior connection to the subject of the action, and assignor retained a 95% interest in any recovery. Here, the assignee has from the beginning had a very real interest in the action. She recovered a

---

1. *Young v. American Cas. Co. of Reading, Pa.*, 416 F.2d 906 (2d Cir. 1969). *See Peterson v. Allcity Ins. Co.*, 472 F.2d 71, 75–77 (2d Cir. 1972); *DiLallo v. Fidelity & Cas. Co. of New York*, 355 F.Supp. 519 (S.D.N.Y.1973); *Gordon v. Nationwide Mutual Ins. Co.*, 30 N.Y.2d 427, 334 N.Y.S.2d 601, 285 N.E.2d 849 (1972).

2. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 829, 89 S.Ct. 1487, 1490, 23 L.Ed.2d 9 (1969).

substantial judgment against the assignor, which remains unpaid. The assignors by the terms of the assignment have assigned their rights in a bad faith action they have against the insurer. The assignment of their claim against the insurance company affords the assignee a means to recover on her judgment, which remains unsatisfied. Assignments of claims in favor of the judgment creditors have been recognized.[3] The further contention that diversity jurisdiction is lacking because plaintiff is a citizen and resident of New York State clearly is without substance in the light of plaintiff's affidavit that at the time of the accident she was resident in Nevada and now in New Jersey.

■ The second theory on which defendants attack this complaint with respect to the assignment is that the assignment violates § 13–101 of the New York General Obligations Law, which prohibits assignments of claims for personal injuries. The plain answer to this is that this is not a personal injury claim. Such an action is a contract action that arises out of the insurance contract.[4] Essentially, a so-called bad faith action under a policy of insurance is for breach of the express covenant to defend and breach of an insurer's obligation in good faith to make a reasonable settlement of a claim within the policy limits.[5]

■ Section 13–101 does not prevent transfer of all tort suits, only those involving personal injuries.[6] With respect to the punitive damage claim in the second cause of action, New York courts permit punitive damages in a bad faith case, though the showing must be extraordinary.[7] Thus, there is no reason why this cause of action also cannot be assigned.

■ Finally, with respect to the third cause of action for attorney's malpractice, this too is assignable in that it is based both on breach of implied contract and negligence, and does not involve personal injuries.[8] The case from which defendants quote at length in this regard, *Gunn v. Mahoney*,[9] is inapposite. There, plaintiff was suing his attorney, alleging that the attorney's negligence had forced him into bankruptcy and caused him great humiliation and injury to reputation. The charge was thus that the alleged malpractice had caused a direct personal injury to the plaintiff. The dispute was over whether the plaintiff or the receiver of his bankrupt estate could maintain the action. Here, there is no allegation that the attorney's acts caused any personal injury, only pecuniary. This claim is also assignable.

This leaves only the motion to dismiss for failure to join an indispensable party. Defendant Empire's theory here is that it was placed under rehabilitation by an order of the State Supreme Court in September 1977, and under the terms of which the State Superintendent of Insurance controlled all its business activities, including offers or non-offers to settle claims and law suits. Thus, it contends it cannot be held responsible for any alleged bad faith conduct with respect to the insured.

■ The documentary evidence submitted on this motion requires rejection of

---

3.  *See Peterson v. Allcity Ins. Co.*, 472 F.2d 71 (2d Cir. 1972); *Brown v. United States Fidelity & Guar. Co.*, 314 F.2d 675 (2d Cir. 1963); *Di-Lallo v. Fidelity & Cas. Co. of New York*, 355 F.Supp. 519, 521 (S.D.N.Y.1973).

4.  *Town of Poland v. Transamerica Ins. Co.*, 53 A.D.2d 140, 385 N.Y.S.2d 987, 990 (4th Dep't 1976); *Williams Paving Co. v. United States Fidelity & Guaranty Co.*, 67 A.D.2d 827, 413 N.Y.S.2d 73, 74 (4th Dep't 1979).

5.  *See Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 436, 334 N.Y.S.2d 601, 285 N.E.2d 849 (1972).

6.  *DiLallo v. Fidelity & Cas. Co. of New York*, 355 F.Supp. 519, 522 (S.D.N.Y.1973).

7.  *Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 438, 334 N.Y.S.2d 601, 608–09, 285 N.E.2d 849, 854–855 (1972).

8.  *Cf. Dulberg v. Mock*, 1. N.Y.2d 54, 150 N.Y. S.2d 180, 182, 133 N.E.2d 695, 696 (1956); *American Hemisphere Marine Agencies, Inc. v. Kreis*, 40 Misc.2d 1090, 244 N.Y.S.2d 602, 603 (Sup.Ct.N.Y.Co.1963).

9.  95 Misc.2d 943, 408 N.Y.S.2d 896 (Sup.Ct. Erie Co.1978).

this contention. The rehabilitation order became effective in September 1977; however, the time of the negotiations with respect to the injured's claim was July and August of 1976. Plaintiff made the offer to settle for $10,000 revocable in August 1976 and when that was rejected by the defendant Empire, placed the action on the ready trial calendar in October 1976, a year before the rehabilitation order. Since the bad faith claim goes to the failure to settle the case before trial and not the trial itself, the order of rehabilitation would appear to be irrelevant. It in any event has no bearing on the cause of action against the attorney. Finally, if the defendant is of the view that any act or conduct of the Superintendent of Insurance after he was designated was a proximate cause of the defendant's failure to pay the maximum amount of the policy, which the injured party was prepared to accept, and that as a result it may be cast in damages, it is free to assert a third-party claim, if so advised.

Defendants' motion to dismiss is denied. So ordered.