Sanford M. NOBEL and Carol Nobel Hirsh, trading as Menallen Coke Company of New Salem, Plaintiffs,

v.

T. J. MORCHESKY and Johnstown Bank and Trust Company, Administrators of the Estate of James A. Morchesky, Kenneth Morchesky, Better Mining Company, Inc., Charles W. Dahl and Mary O. Dahl, his wife, Defendants.

Civ. A. No. 78–836.

United States District Court,
W. D. Pennsylvania,
Civil Division.

March 24, 1982.

---

**220**

E. Barclay Cale, Jr., Philadelphia, Pa., Robert J. Lipsitz, Pittsburgh, Pa., Ira Coldren, Uniontown, Pa., for plaintiffs.

Dean Bowman, Somerset, Pa., for Better Mining, Inc., and Charles and Mary Dahl.

Gary C. Horner, Robert J. Wharton, Johnstown, Pa., for Estate of James Morchesky.

## OPINION

SIMMONS, District Judge.

This purported diversity action was brought July 28, 1978, by Plaintiffs Sanford M. Nobel and Carol Nobel Hirsh, residents of New York State, trading as Menallen Coke Company of New Salem, as alleged owners of rights to certain coal, against the Pennsylvania Defendants the Estate of James A. Morchesky, Better Mining Company, Inc., and Charles and Mary Dahl, purported owners of surface rights to said coal, seeking damages and injunctive relief for the allegedly wrongful removal of certain coal from a tract of land situate in Fayette County, Pennsylvania.

A non jury trial was held in this matter March 24–27, 1980, before the Honorable Judge Daniel Snyder, now deceased. Following the trial, no findings of fact or conclusions of law were entered by Judge Snyder, and on August 1, 1980, the parties stipulated that the case be submitted to the Honorable Judge Paul A. Simmons for decision based on the transcript of the trial previously held. Each side presented oral argument in support of its contentions on May 13, 1981, and thereafter submitted briefs. After reviewing the record, the oral arguments advanced, and studying the briefs, the Court was unable to determine whether the Court had proper diversity jurisdiction of the matter, and on September 10, 1981, the Court issued an Order reopening the case to take additional evidence and testimony pertaining to the issue of jurisdiction. Plaintiff was specifically ordered on September 10, 1981 to furnish to the Court a true and certified exemplification of the entire record of *Max Nobel and Helen Nobel, Plaintiffs v. James A. Morchesky, et al.*, filed at No. 1997, Equity, 1977 in the Court of Common Pleas of Fayette County, Pennsylvania; a certified copy of the original articles of Limited Partnership of the Menallen Coke Company of New Salem, and certified copies of any amendments thereto; the names and addresses of all of the partners, general and limited, of Menallen Coke Company of New Salem from the inception of the partnership to date, and the dates of their membership in the partnership; and any and all documentary evidence verifying Paragraph 10 of the stipulated facts to the effect that Max Nobel and wife acted as straw parties for Menallen Coke Company of New Salem as grantees in the subject deed dated December 28, 1973. This information was later provided and made a part of the record as exhibits in this case.

Hearing on these matters was set for October 30, 1981, and after hearing, the Court made findings of fact and conclusions of law on the record and entered an Order on the record dismissing the case with prejudice for lack of diversity jurisdiction and ordering Plaintiffs to pay costs. On November 9, 1981, Plaintiff filed a Motion to Amend and Substitute Findings of Fact and Conclusions of Law, and following oral argument on this motion February 19, 1982, the Court took the motion under advisement. Plaintiff now seeks to amend those findings of fact and conclusions of law previously announced by the Court, insofar as they pertain to this Court's jurisdiction in the above captioned case.

 Because federal courts are courts of limited jurisdiction, it is the duty of the Court *sua sponte* to raise the question of whether diversity jurisdiction in fact exists. In this regard, it is crucial to note that federal jurisdiction cannot be conferred by stipulation, agreement or consent of the parties. *Reale International, Inc. v. Federal Republic of Nigeria*, 647, F.2d 330 (2d Cir. 1981); *Occidental of Umm al Quaywayn, Inc. v. A Certain Cargo of Petroleum*, 577 F.2d 1196, 1199 n.1 (5th Cir.) *cert. denied*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1978); *Basso v. Utah Power & Light*, 495 F.2d 906, 909 (10th Cir. 1974); *Lang v. Windsor Mount Joy Mutual Insurance Co.*, 507 F.Supp. 967 (E.D.Pa.1981); *Coggins v. Carpenter*, 486 F.Supp. 270 (E.D.Pa.1979); *Barrett v. Covert*, 354 F.Supp. 446, 450 (E.D.Pa.1973).

 "When the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition of the merits." *Carlsberg Resources Corporation v. Cambria Savings and Loan Association*, 554 F.2d 1254, 1256 (3d Cir. 1977).

As previously noted, the named Plaintiffs in this purported diversity action, Sanford M. Nobel and Carol Nobel Hirsh, are New York residents trading as Menallen Coke Company of New Salem. Menallen Coke Company is a limited partnership originally formed December 1, 1965, pursuant to Pennsylvania law, which has as its principal place of business New Salem, Menallen Township, Fayette County, Pennsylvania. At the time the original limited partnership was formed, the general partners were Max B. Nobel, a Pennsylvania resident, and Sanford M. Nobel and Carol Nobel Hirsh. The limited partners were Sanford M. Nobel as trustee for Andrew B. Nobel and Gary Nobel, minors. An amended certificate of the limited partnership was filed October 26, 1970 in Fayette County, adding as two additional limited partners Carol Nobel Hirsh as trustee for David Hirsh and Sanford M. Nobel as trustee for Philip Nobel.

On May 21, 1978, Max B. Nobel purported to resign as managing and general partner of the limited partnership, Menallen Coke Company. *See* Court Exhibit AAA–4.

The Court had previously found on October 30, 1981, that diversity jurisdiction was lacking since the attempted withdrawal of Pennsylvania resident Max Nobel, general partner, from the limited partnership, Menallen Coke Company of New Salem, did not comport with the requirements of the Pennsylvania Uniform Limited Partnership Act and was an abortive attempt to collusively create diversity of citizenship. It followed then that Max Nobel, a resident of Pennsylvania, was and is, at all relevant times a member of said limited partnership and is a real Plaintiff party in interest. Because Max Nobel is a Pennsylvania citizen and resident, and all of the Defendants are Pennsylvania citizens and residents, there is no true diversity of citizenship.

This finding of no diversity of citizenship was based on the evidence submitted in the October 30, 1981 hearing, and further review of this evidence and the applicable Pennsylvania law convinces the Court that this ruling was proper and was mandated by the evidence.

The Pennsylvania Uniform Limited Partnership Act of 1975, set forth in 59 Pa. Cons.S. § 501 *et seq.* (Purdon Cum. Pocket Part 1981–82), states when and how a certificate of limited partnership should be

amended. Section 542(b)(5) provides that a certificate of limited partnership shall be amended when "A general partner *retires*, dies, or becomes insane, and the business is continued under section 534 (relating to effect of retirement, death, or insanity of a general partner)." (Emphasis added).

Section 543(a)(2) requires that an amendment to a certificate of limited partnership shall be signed by *all* members. Section 543(d)(1)(i) further provides that a certificate of limited partnership is amended or cancelled *only* when there is filed in the Pennsylvania Department of State a writing in accordance with section 543(a). (Emphasis added).

■ The document purporting to affect Max Nobel's resignation from the limited partnership was executed May 21, 1978, and sworn to May 22, 1978, but was never filed or recorded in the office of the Department of State and/or the Prothonotary of Fayette County, Pennsylvania. (Exhibit AAA–4). A certificate of summary of record concerning the limited partnership (Exhibit AAA–1) was executed May 21, 1978, and was filed with the Department of State May 31, 1978, which made no reference of any kind to Max Nobel as a general partner of the limited partnership, or as a resigning partner of the limited partnership. Filed with the Pennsylvania Department of State and contemporaneously with that summary of record of the limited partnership, was an amended certificate of limited partnership for Menallen Coke Company of New Salem, executed May 21, 1978. Neither the summary of record of the limited partnership nor the amended certificate of the limited partnership was signed by Max Nobel as a general partner of the limited partnership as required by section 543(a)(2), although both documents were signed by Sanford M. Nobel and Carol Nobel Hirsh as general partners. Max Nobel, as a general partner of the limited partnership, was required by the Pennsylvania Uniform Limited Partnership Act, 59 Pa.Cons.S. § 543(a)(2), to sign the amendment to the certificate of limited partnership, which purported to evidence his retirement from said partnership. Be-

cause he failed to sign said amended certificate of limited partnership that indicated his retirement from the same, Max Nobel must presently be treated as a general partner of the limited partnership, since no properly amended certificate of limited partnership signed by Max Nobel has been filed with the Pennsylvania Department of State as required by the Pennsylvania Uniform Limited Partnership Act. *See* § 543(d)(1)(i).

The original certificate of limited partnership in this case is not considered to have been lawfully amended until all members, including Max Nobel, general partner, have signed the same, and then only after the properly executed certificate has been recorded with the Pennsylvania Department of State.

Plaintiff argues that only the signature of the continuing members is required to make a certificate of amendment to a limited partnership effective. This argument of Plaintiff offends all of the public policy considerations that require full public disclosure in matters involving the withdrawal of general partners from a limited partnership. If a general partner with unlimited liability could retire from a limited partnership without anyone knowing of it, injustice would certainly result. In fact, in this case, a party searching the records in the office of the Pennsylvania Department of State would never know that Max Nobel was a general partner at any time whatsoever in the subject limited partnership, Menallen Coke Company of New Salem. There is no way that a potential litigant or creditor investigating the Menallen Coke Company of New Salem records filed with the Pennsylvania Department of State could obtain knowledge that Max Nobel was ever a general partner of the limited partnership. Plaintiff argues that anyone searching the limited partnership records would also search the county where the partnership has its place of business. But, a search of the Fayette County records in this case would show Max Nobel as a general partner without any mention of his purported resignation, thus confusing and misleading po-

tential creditors. To adopt Plaintiff's view would therefore be contrary to public policy, common sense and the intentions of the Pennsylvania legislature.

It is obvious that Pennsylvania citizen Max Nobel remains as a general partner of the limited partnership since his purported resignation from the limited partnership was ineffective as a matter of law. The law is clear that a limited partnership is an unincorporated association whose citizenship is that of the persons composing the partnership. The citizenship of even a limited partner will defeat diversity if it is the same as the citizenship of one of the defendants. *Trent Realty Associates v. First Federal Savings & Loan Association of Philadelphia*, 657 F.2d 29, 32 (3d Cir. 1981). Because general partner Max Nobel is a Pennsylvania citizen, and all defendants are Pennsylvania citizens, there is no diversity jurisdiction in this case. Thus the Court's previous dismissal for lack of diversity jurisdiction was proper.

Even assuming that Max Nobel managed to legally withdraw from the limited partnership, which is certainly not the case, no diversity jurisdiction could exist because diversity jurisdiction would have been collusively obtained. "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Policy favors a strict application of this statute. *Prudential Oil Corporation v. Phillips Petroleum Company*, 546 F.2d 469 (2d Cir. 1976).

It is clear from the record in this matter that this action could never have been maintained in federal court if Max Nobel had not resigned from the partnership or conveyed his interest in the land he held by the entireties, and which is the subject of this litigation, to the limited partnership. Of course, this alone may be insufficient to prove collusion, but Max Nobel's actions must be viewed in light of all the circumstances. Max Nobel testified under oath at the October 30, 1981 hearing that his attempted withdrawal from the limited part-

nership was done for the purpose of creating diversity jurisdiction. Transcript, October 30, 1981, at 72. This convinces the Court that Max Nobel's actions constituted a collusive attempt to create federal jurisdiction where no such jurisdiction properly existed. *See Kramer v. Caribbean Mills*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) (collusive jurisdiction where assignment was made for minimal consideration, for purposes of collection, and was motivated by a substantial desire to make diversity jurisdiction available.) *See also Prudential Oil Corp., supra; Nagle v. La Salle National Bank*, 472 F.Supp. 1185 (N.D.Ill.1979).

Plaintiffs argue that Max Nobel and his wife were holding the land involved in this litigation in trust and as a straw party for the limited partnership. This contention is completely negated and contradicted by the facts in this case.

First, Max Nobel is particularly unworthy of belief since he swore under oath in an affidavit to a complaint filed in state court concerning these same coal lands, *Max Nobel and Helen Nobel, v. James Morchesky and Better Mining Company*, No. 2997, Equity, C. P. Fayette County, August 2, 1977, that he and his wife were the owners of the property and were entitled to damages in their own names. Secondly, Max Nobel exercised dominion and control over the property by suing for damages in his own name, as well as by paying taxes in his own name. Additionally, he directed his attorney to discontinue the state court action, which is but another clear indication of his dominion and control over this entireties property, all of which is contrary to his previous testimony in this case. Finally, an attempt was made on May 5, 1978 to deed the said coal lands to the partnership, although this attempted conveyance was certainly *ineffective* to transfer the chose in action, (i.e. the right to recover damages for alleged injuries to the coal land), which is the real subject of this litigation, as will be discussed later.

These facts, taken with Max Nobel's admission to the Court that he resigned from

the partnership to create diversity jurisdiction clearly indicate that there can be no diversity jurisdiction even if Max Nobel's resignation as general partner of the limited partnership was effective, since diversity jurisdiction would have been collusively manufactured.

Further, even assuming for purposes of argument that diversity jurisdiction exists, this Court finds that there is no subject matter jurisdiction in this case.

■ The concept of res adjudicata is applicable since this case was heretofore settled in Fayette County by Max and Helen Nobel as tenants by the entireties. The land presently the subject of this litigation was, at the time of the filing of the state court action, sworn by Max Nobel to be entireties property to which Max Nobel and his wife held *clear* title. Max Nobel controlled the litigation of the state court action, including settlement negotiations before Fayette County Judge Adams. Max Nobel, in his own name and not in his capacity as general partner of the limited partnership Menallen Coke Company of New Salem, directed his attorney to discontinue the Fayette County action. However, this action was not terminated since trial proceedings had begun, and on February 21, 1978, the check of M & M Mining, Inc. in the amount of $12,407.28 and the check of Menallen Coke Company in the amount of $9,000.00 was paid into the Court of Common Pleas of Fayette County to be deposited in the Office of the Prothonotary pending final determination of the matter, and such monies still remain with that court. Court Exhibit A–3.

Until such money is disposed of, the state court proceeding cannot be closed, then or now, without a prior order of the Court of Common Pleas of Fayette County. Pa.R. C.P. 229. Also, the Fayette County proceeding would remain open in any event, and a second case could not be brought, since the record of the Prothonotary of Fayette County does not indicate that the costs of the former action, that is, the Fayette County action, have been paid. *See* Pa.R.C.P. 231.

Thus the issue of the damages due for wrongful removal of coal has been settled on the basis of $2.00 per ton in the Fayette County action, and the only remaining question left to be decided in the Fayette County case is how the money remaining with the Fayette County Court should be distributed.

■ Finally, there can be no cause of action by the limited partnership for the alleged wrongful removal of coal because the cause of action for damages remains with Max and Helen Nobel, and said cause of action is their property, not the property of the limited partnership. The Court previously found in the October 30, 1981 hearing that all of the relevant coal in question was mined from the subject land prior to May 5, 1978, the date of the Nobel deed to the limited partnership. Transcript, October 30, 1981, at 26. We reiterate this finding: At the time of Max and Helen Nobel's May 5, 1978 deed to the limited partnership all damage to said land had occurred. Max Nobel's May 5, 1978 deed transferring the subject property to the limited partnership did not transfer the chose in action for the damages resulting from the allegedly wrongful removal of the coal since all damages had occurred prior to May 5, 1978. In Pennsylvania, such a chose in action is assignable. *Moffit et al. v. Vesta Coal Co.*, 17 Washington County Reports 204 (1934) (damages for tortious injury to property are assignable); *Maxon v. Chaplin*, 9 D. & C.2d 649 (C.P. Cambria County, 1956) (right of action for damages in trespass for stripmining of coal is assignable).

The chose in action for prior damages to the land was separate from the land at the time of the May 5, 1978 deed to the limited partnership, and is therefore the property of Max and Helen Nobel as tenants by the entireties. Thus the limited partnership has no title to the cause of action in the present case, and this Court would have no subject matter jurisdiction even assuming the existence of diversity jurisdiction (this Court has found that diversity jurisdiction does not exist).

For the reasons previously discussed in this Opinion, the October 30, 1981 Order of the Court dismissing the action for lack of diversity jurisdiction will be affirmed, and Plaintiff's Motion to Amend the Findings of Fact and Conclusions of Law heretofore entered in this case will be denied.

An appropriate Order will be entered.