**DOUGLAS ENERGY OF NEW YORK, INC., et al., Plaintiffs,**

v.

**MOBIL OIL CORPORATION, Defendant.**

No. 84–1150.

United States District Court, D. Kansas.

May 14, 1984.

Don O. Concannon, Hugoton, Kan., Gibson, Dunn & Cruther, Denver, Colo., Rosenstein, Fist & Ringold, Tulsa, Okl., for plaintiffs.

Robert J. Roth, Wichita, Kan., N.E. Maryan and Charles H. Dubois, Denver, Colo., for defendant.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Plaintiffs in this oil and gas case seek a declaration that leases held by defendant Mobil Oil Corporation on Western Kansas land owned by certain plaintiffs have terminated as to horizons below those from which production has been obtained, and that "top leases" as to lower horizons granted by those plaintiffs to Douglas Energy Company, Inc. and now held by plaintiff Douglas Energy of New York, Inc. are valid. The lawsuit was filed in the Stevens County, Kansas District Court, and was removed here by Mobil; it is now before the Court on plaintiffs' motion to remand.

1. Defendant's motion to compel discovery is also before the Court. The Court perceives that the effect of its decision on the remand issue renders the discovery dispute moot; defendant's motion to compel is accordingly denied.

2. The top leases were originally granted to Douglas Energy Company, Inc., a Kansas corporation. The New York corporation was formed

For reasons stated below, that motion must be denied.[1]

Plaintiffs' motion to remand is predicated on the fact that plaintiff Douglas Energy of New York, Inc. and defendant Mobil Oil Corporation are both New York corporations, and that the necessary complete diversity of citizenship is absent. While plaintiffs admit that Douglas Energy of New York was formed, and the top leases assigned to it, for the sole purpose of defeating diversity jurisdiction,[2] they contend that remand is necessitated in light of the Supreme Court's decision in *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). This Court disagrees. In the first place, *Mecom* involved a situation where apparent diversity was destroyed by the appointment of a nondiverse administrator to prosecute a wrongful death action. That situation differs from this one, where apparent diversity has been destroyed by assignment, in several respects that have been recognized by the Supreme Court itself:

(1) In the former situation, some representative must be appointed before suit can be brought, while in the latter the assigner normally is himself capable of suing ...; (2) under state law, different kinds of guardians and administrators may possess discreet sorts of powers; and (3) all such representatives owe their appointment to the decree of a state court, rather than solely to an action of the parties.

*Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 n. 9, 89 S.Ct. 1487, 1490 n. 9, 23 L.Ed.2d 9, 14 n. 9 (1969). More important, as pointed out by Judge Haynsworth in his opinion in *Miller v. Perry*, 456 F.2d 63 (4th Cir.1972), the *Mecom* rationale was severely undercut by *Kramer:*

a few days—and the leases assigned to it a few minutes—before this action was filed. The New York and Kansas corporations are both completely owned by a single individual, Douglas Bendell, who is also the sole director of both. Indeed, as far as can be determined, the sole business function of the New York corporation is to prosecute this litigation.

[*Mecom*] rested on the twin pillars of the earlier views that looking behind the appointment of an administrator to the reality was somehow a collateral attack on the order of appointment, and that inquiry into motive was impermissible .... Neither view can survive *Kramer.* If inquiry into the facts surrounding the appointment constitutes a collateral attack on the order making the appointment, that is the end of the matter, and there was no point in holding the question open in *Kramer.* If inquiry into motive is impermissible, the decision in *Kramer* should have gone the other way, since all that appeared on the surface was an assignment valid under state law.

We are obliged to read *Kramer* as injecting a new note of realism into the determination of diversity jurisdiction.

456 F.2d at 67 (citation omitted); *accord, Messer v. American Gems, Inc.,* 612 F.2d 1367 (4th Cir.), *cert. denied* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980).

It is, of course, a familiar notion that Congress has created diversity jurisdiction and the right of removal granted in 28 U.S.C. § 1441 for the purpose of protecting out-of-state litigants from local prejudice, and it would flout that transparent intent to allow plaintiffs, through a "cynical device ... to benefit from whatever local prejudice a trial against a foreign corporation before a [local] jury might afford them." *Gentle v. Lamb-Weston, Inc.,* 302 F.Supp. 161 (D.Me.1969). The right to remove would be rendered meaningless if any plaintiff could defeat it by the expedient of completing the requisite formalities of incorporation in the defendant's home state. Indeed,

> so long as federal diversity jurisdiction exists * * * the need for its assertion may well be greatest when the plaintiff tries hardest to defeat it. The plaintiff who chooses to sue a non-citizen defendant in a state court may be motivated by the hope that the out-of-state defendant will be at a substantial disadvantage in that court and the likelihood of such motivation increases with the lengths to which the plaintiff will go to prevent removal to a federal forum.

American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Official Draft, at 160 (1969). Just as in *Gentle, supra, Miller, supra,* or *Picquet v. Amoco Production Co.,* 513 F.Supp. 938 (M.D.La.1981), in all practical respects this is a diversity case, and just as did those courts, this Court concludes that it is not powerless to prevent plaintiffs' machinations from depriving Mobil of the federal forum that Congress intended it to have.