**UNIGARD SECURITY INSURANCE COMPANY as Subrogee of Beauty and the Beast d/b/a Benetton, Plaintiff,**

**v.**

**M.W. CARLSON ASSOCIATES, INC. a/k/a Carlson, Jackson, Hurley Associates, Inc., and Waco Electric Corporation, Defendants.**

No. 86 C 6898.

United States District Court,
N.D. Illinois, E.D.

April 10, 1987.

Daniel G. Suber, Chicago, Ill., for plaintiff.

Elliott R. Schiff, O'Conner & Schiff, Kathleen McQueeny, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On February 6, 1987, this court entered an order dismissing the complaint for lack of subject matter jurisdiction because Benetton, plaintiff's insured, was an indispensable party whose joinder in the lawsuit violated the complete diversity requirement. *See Unigard v. Carlson,* No. 86–6898 (N.D.Ill. Feb. 6, 1987) (Duff, J.). Before the court is Unigard's motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure for reconsideration of the February 6 order.[1]

## DISCUSSION

Rule 60(b) allows for relief from final judgment for specific reasons as well as, in subsection (b)(6), for "any other reason justifying relief." A rule 60(b)(6) motion should be granted, however, only "upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns,* 798 F.2d 1069, 1073 (7th Cir.1986).

Unigard claims that the motion should be granted because Benetton assigned its entire interest in the lawsuit to Unigard for $100, the amount of Benetton's deductible. Such assignment, the argument continues, ensures that Benetton is no longer an indispensable party to the lawsuit. In response, defendant Waco Electric Corporation asserts that the assignment between Benetton and Unigard violates 28 U.S.C. § 1359. We agree with Waco, and hold that Unigard has not shown "extraordinary circumstances" justifying relief.

Section 1359 of Title 28 of the United States Code provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

The purpose of this statute is to prevent parties from "manufacturing" diversity jurisdiction in order to get "vast quantit[ies] of ordinary contract and tort litigation ... into the federal courts...." *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 828–29, 89 S.Ct. 1487, 1490, 23 L.Ed.2d 9 (1969).

The present case is a perfect example of the kind of assignment § 1359 sought to prohibit. By virtue of bringing this motion, Unigard admits that Benetton retained an interest in this lawsuit at the time of this court's prior ruling. Once this court ruled against Unigard, saying that this suit could not proceed in federal court so long as Benetton had an interest in the recovery, the assignment between them ensued. Unigard has advanced no plausible reason for the assignment other than to

---

1. Unigard referred to its motion simply as a "motion for reconsideration." Since the February 6 order was a final judgment, we must treat Unigard's plea as a motion for relief from judgment under Fed.R.Civ.P. 60(b). The only subsection of the rule applicable here is 60(b)(6).

get into federal court by "manufacturing" diversity jurisdiction.

In a recent Seventh Circuit opinion, Judge Posner stated "it is an unsettled question whether an assignment, if bona fide in the sense that there is a real and not merely nominal or sham transfer of the assignor's interest in the claim, can trigger section 1359 merely because the motive is to confer federal jurisdiction." *Steele v. Hartford Fire Insurance Company*, 788 F.2d 441, 444 (7th Cir.1986) (citation omitted). The court went on to discuss how § 1359 would apply in different contexts, and then concluded as follows:

> But if getting into federal court was the sole purpose of the assignment, then even if the assignment was supported by consideration and was lawful under state law, one could question in just what sense the assignment was bona fide, and, more to the point, could ask whether it is not the precise purpose of section 1359 to discourage people from using the device to get access to the federal courts.

*Id.*

Judge Posner's reasoning applies both directly and forcefully to this case. While the assignment from Benetton to Unigard is not collusive in its most pejorative sense, *compare, Kramer, supra,* (assignment was made in return for a $1.00 payment and a promise by the assignee to pay the assignor 95% of any net recovery on the assigned cause of action), it is still collusive. It is clear that the assignment in this case was made solely for the purposes of obtaining federal court jurisdiction.

Moreover, Unigard's attempt to argue that its motives are irrelevant to this court's decision is unfounded. Unigard cites *Kramer* for this proposition, but the *Kramer* court explicitly said that it was not reaching that issue. *Id.* at 828 n. 9, 89 S.Ct. at 1490 n. 9. In addition, of the four cases cited by the *Kramer* court on this point, three were decided prior to 1915 and one has been severely criticized. Thus Uni-

gard can take no solace in that court's decision.[2]

### CONCLUSION

Accordingly, Unigard's Rule 60(b)(6) motion for reconsideration of this court's order of February 6, 1987 is denied.

---

**2.** Further support for examining Unigard's motives comes from the American Law Institute, which has proposed legislation that would invalidate any assignment made, in whole or in part, to invoke federal jurisdiction. *See* American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Official Draft, 1969, § 1307(b).