IVANHOE LEASING CORPORATION, Plaintiff,

v.

TEXACO, INC., Texaco Pipeline, Inc., Texaco Exploration and Production, Inc., and Texaco Producing, Inc., Defendants.

Civ. A. No. G–92–77.

United States District Court, S.D. Texas, Galveston Division.

May 29, 1992.

W. Mark Lanier, Vernon & Lanier, Houston, Tex., for plaintiff.

Michael C. Farrow, Frederick B. Goldsmith, Bell & Murphy, Houston, Tex., for defendants.

## ORDER

KENT, District Judge.

Before the Court is Plaintiff's Motion to Remand. For the reasons stated below, the Court is of the opinion that the motion should be GRANTED.

### I.

This case involves a parcel of real property in St. Mary's Parish, Louisiana (the "Property"). Defendant Texaco, Inc. ("Texaco") leased the Property from the then owners in 1941. In 1991, the Property was acquired jointly by Southern Casing of Louisiana, Inc. ("Southern Casing") and Starfire Corporation ("Starfire"). Texaco was notified of this change of ownership in 1991 by a letter from Mr. Nathan Levy, the Secretary of Southern Casing.[1] In that letter and in a subsequent letter, Mr. Levy notified Texaco that its activities had exceeded the scope of the lease agreements and were not in compliance with relevant environmental regulations. The letters also demanded that Texaco repair damage to the Property and undertake other measures.

On October 16, 1991, Texaco filed a Petition for Declaratory Judgment in the 16th Judicial District Court, St. Mary's Parish, Louisiana seeking, *inter alia*, a declaration that it had not exceeded the scope of the lease agreements and that it was not required to repair any alleged damage to the Property prior to the lease's termination.

On October 23, 1991, Plaintiff Ivanhoe Leasing Corporation ("Ivanhoe") acquired the Property from Starfire and Southern Casing. Ivanhoe is a Delaware corporation that was created on October 8, 1991. Its President is Nathan Levy, and its only assets are the Property and a bank account. The only person with signature authority over the bank account is Michael X. St. Martin, an officer of Starfire. The sole shareholder of Southern Casing is Mr. St. Martin's son.

On October 28, 1991, Ivanhoe received a check from Starfire in the amount of $16,250 and a check from Southern Casing in the amount of $8,750. On the same day, Ivanhoe issued a check payable to Southern Casing and Starfire in the amount of $25,000.00 as payment for the Property.

On January 13, 1992, Ivanhoe filed the instant action in the 130th Judicial District Court, Matagorda County, Texas seeking actual and punitive damages for negligence, gross negligence, trespass, and nuisance.[2] Defendants removed to this Court on February 21, 1992 alleging that complete diversity exists between the parties. Ivanhoe now moves to remand on the ground that all parties are Delaware corporations, and, therefore, removal was improper because complete diversity is absent.

---

1. Mr. Levy also claims to be the secretary of Starfire. Defendants, however, appear to dispute this claim.

2. In particular, Ivanhoe seeks recovery for, *inter alia*, mental anguish, pain and suffering, and medical expenses. Ivanhoe's Complaint does not, however, explain how a corporation can suffer mental anguish or pain and suffering or the circumstances under which a corporation may require medical treatment.

## II.

Defendants rely primarily on *Grassi v. Ciba–Geigy, Ltd.*,[3] in which the Fifth Circuit held that federal courts have both the duty and the responsibility to examine the motives underlying a partial assignment that destroys diversity. In *Grassi*, the plaintiffs obtained a default judgment against a subsidiary of the defendant. The subsidiary was an alien corporation, and the plaintiffs could not enforce the judgment in the subsidiary's country of incorporation under that country's law. Therefore, the plaintiffs instituted a state-court collection suit against the defendant-parent, which was also an alien corporation. On the same day they instituted that action, the plaintiffs assigned a 2% interest in their claim to another alien corporation. The defendants removed alleging diversity of citizenship, and the Plaintiffs moved to remand on the ground that complete diversity does not exist in a suit between aliens. The district court denied the motion. *Grassi*, 894 F.2d at 182. On appeal the Fifth Circuit concluded that the assignment had been made to defeat a federal court's exercise of diversity jurisdiction and affirmed the trial court.

> [F]ederal district courts have both the authority and the responsibility ... to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal.

*Id.* at 185.

Mr. Levy testified that one of the reasons for incorporating Ivanhoe in Delaware was to avoid being forced to resolve its dispute with Texaco in federal court. Thus, Defendants argue, this Court has jurisdiction under *Grassi*.

By contrast, Plaintiff argues that *Grassi* supports a remand. The record indicates that the property was transferred for reasons unrelated to the jurisdictional issue before the Court and that the decision to incorporate Plaintiff in Delaware, although motivated in part by a desire to destroy diversity, was also influenced by other factors unrelated to jurisdiction. Thus, unlike *Grassi*, in which the Plaintiffs assigned a 2% interest in their claim to an alien corporation for the sole purpose of defeating diversity, it cannot be said that the Property's transfer was effected solely, or even primarily, to defeat this Court's exercise of diversity jurisdiction.

## III.

█ In the Court's view, *Grassi* is distinguishable from the instant case.

### A.

First, *Grassi* addresses the partial assignment of claims. By statute, a party cannot *create* diversity by an assignment of claim. 28 U.S.C. § 1359. There is, however, no corollary statute that prohibits an assignment to destroy diversity. Nevertheless, in *Grassi*, the Fifth Circuit held that a district court may disregard the citizenship of a partial assignee if the court determines that the partial assignment was made principally to defeat removal. *Grassi*, 894 F.2d at 185. This conclusions is supported by recent decisions. *See, e.g.,* C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3641, at 133–35 & n. 14 (2d ed. 1985 & Supp.1991).

The instant case, however, concerns the transfer of real property, not a mere assignment of claim. Defendant has cited no cases, and the Court has found none, supporting the proposition that a district court may examine the motives underlying the transfer of a grantor's entire interest in the real property that is the subject of the underlying dispute. In the absence of any controlling authority on point, this Court is reluctant to craft such a rule.

> The absence of a statute comparable to Section 1359 should not completely prevent the federal courts from protecting a litigant's right to diversity jurisdiction when the controversy really is between parties on one side who all are from different states than those on the other side. However, the absence of a statute

**3.** 894 F.2d 181 (5th Cir.1990).

does indicate the importance of judicial restraint.

*Id.* at 142 (footnotes omitted).

### B.

Moreover, in *Grassi*, the plaintiffs transferred only 2% of their claim. In reaching its holding that a district court may examine the motives underlying such a partial assignment,[4] the Fifth Circuit noted that the Supreme Court has never overturned or even reexamined its holding that a federal district court may not consider the motives underlying a complete assignment. *Grassi*, 894 F.2d at 184–85. *See also Kramer v. Caribbean Mills*, 394 U.S. 823, 828 n. 9, 89 S.Ct. 1487, 1490 n. 9, 23 L.Ed.2d 9 (1969). In the instant case, it is undisputed that Starfire and Southern Casing transferred their entire interest in the Property to Plaintiff. Therefore, even assuming that no meaningful distinction exists between an assignment of claim and a transfer of real property, the Court is not convinced that, on these facts, the decision in *Grassi* supports this Court's exercise of jurisdiction.

### IV.

◼ Finally, even assuming that *Grassi* is controlling, the record indicates that the transfer in question was not undertaken primarily to defeat this Court's exercise of diversity jurisdiction. Texaco has leased the Property for approximately 40 years. Plaintiff asserts that after Starfire and Southern Casing acquired the property they became concerned that Texaco's activities might expose them to liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). Texaco has filed one Chapter 11 Bankruptcy Petition within the last ten years, and has, at various times

following its discharge, indicated that it was considering filing another. Plaintiff asserts that Starfire and Southern Casing decided to transfer the property to it because they were afraid that, if Texaco filed for bankruptcy, Starfire and Southern Casing might be held liable for all the environmental damage caused by Texaco since the inception of the lease. In an effort to decrease the assets available to meet such a determination of liability, Starfire and Southern Casing decided to create Plaintiff and transfer the property to it. Once this decision was made, it was also necessary to decide where to incorporate Plaintiff. Plaintiff asserts that the ultimate decision to incorporate in Delaware was based on several factors, including the desire not to litigate this action in federal court.

While it seems unlikely that Southern Casing and Starfire can avoid CERCLA liability by the maneuvers described above,[5] nothing in the record indicates that the reasons offered for the creation of Plaintiff and the transfer of the Property to it are false or offered in bad faith. Based on a careful examination of the record, the Court finds that such actions were not undertaken primarily to defeat this Court's exercise of diversity jurisdiction.

### V.

It is therefore ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion to Remand is hereby GRANTED, and this action is hereby REMANDED to the state court from whence it came.

IT IS SO ORDERED.

---

**4.** In reaching its decision, the *Grassi* court relied on the Supreme Court's decision in *Kramer v. Caribbean Mills*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). In that case, a creditor attempted to create jurisdiction by assigning his interest in his debt to a third party who agreed to reconvey 95% of any recovery obtained. The assignee argued that because the assignment was valid under state law, the federal court was bound to respect it. The Supreme Court disagreed, however, holding that the issue of federal jurisdiction is a matter of federal, not state, law. Finding the assignment collusive, the Court held that the district court was free to disregard it for jurisdictional purposes.

**5.** *See, e.g., United States v. Carolina Transformer Co.*, 739 F.Supp. 1030, 1038–39 (E.D.N.C.1989).