

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-2002

# Land Holdings v. Mega Holdings Inc

Precedential or Non-Precedential:

Docket 0-2890

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Land Holdings v. Mega Holdings Inc" (2002). *2002 Decisions*. Paper 181.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/181

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed March 15, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2890

LAND HOLDINGS (ST. THOMAS) LTD., an Isle
of Man corporation

v.

MEGA HOLDINGS, INC.; KATHY MULLEN d/b/a
REGENCY CHARTER SERVICES; AQUAMARINE TOURS,
INC.; MAGDALENA JAMES; DENNIS JAMES d/b/a
BERNIE'S TREASURES; STEVEN BISHOP d/b/a STEVEN
BISHOP, INC. d/b/a BISHOPS ARCHITECTURAL;
CAPTAIN AND CREW OF THE CARIBBEAN, INC.;
CARIBBEAN SAILING CHARTERS, INC.; ROBERT
CARSON; DENISE CARSON d/b/a CARSON YACHT
BROKER; VERNA RUAN d/b/a CREWED CHARTERS;
DARYL LANHAM SULLIVAN; ERICA BENJAMIN d/b/a
ERICA'S HAIR DESIGN; CHUCK FERGUSON; BRUCE
WILLIAMS; MANJO VED d/b/a M&J TRADING; JEFF
FROVARP d/b/a PLASTICALLY NEW; DENNIS FRICKE
d/b/a REFCO MARINE REFRIGERATION; SEABORNE
AVIATION, INC.; MEL LUFF d/b/a UNDER WATER
SAFARIS; GATELE WEEKES d/b/a VI CANVAS; D.
AVELLOGG d/b/a VIRGIN ISLANDS CHARTER YACHT
LEAGUE – FLAGSHIP; MICHAEL RUICH d/b/a VIRGIN
ISLAND CHARTER YACHT LEAGUE – MARINA; WON'S
CORPORATION d/b/a WOK ON WATER EXPRESS;
WATER UNDER THE PIER, INC. AND ANY AND ALL
PERSONS OR CORPORATIONS CLAIMING AN INTEREST
OF ANY KIND OR NATURE WHATSOEVER IN OR TO
PLOTS 4 OR 4C OF ESTATE THOMAS, ST. THOMAS,
US VIRGIN ISLANDS

*Kathy Mullen d/b/a Regency Charter Services
and Aquamarine Tours, Inc.,
        Appellants

*(See Court's Order dated 10/10/01)

APPEAL FROM THE DISTRICT COURT OF THE
VIRGIN ISLANDS

(D.C. No. 98-cv-00078)
District Judge: The Honorable Thomas K. Moore

Argued December 6, 2001

BEFORE: BECKER, Chief Judge, NYGAARD and COWEN,
Circuit Judges.

(Filed March 15, 2002)

        John H. Benham, III, Esq. (Argued)
        Watts & Benham
        No. 1 Frederiksberg Gade
        P.O. Box 11720
        Charlotte Amalie, Saint Thomas
        USVI, 00801
         Counsel for Appellant

        Richard H. Dollison, Esq. (Argued)
        Stryker, Duensing, Casner &
         Dollison
        Drakes Passage, 2nd Floor
        P.O. Box 6785
        Charlotte Amalie, St. Thomas
        USVI, 00804
         Counsel for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

The District Court granted Land Holdings Ltd.'s motion
for summary judgment. Appellants, Aquamarine Tours, Inc.
and Kathy Mullen d/b/a Regency Charter Services, Inc.,
raise four issues on appeal. First, they contend that the
District Court of the Virgin Islands did not have subject
matter jurisdiction over this foreclosure action because
Land Holdings collusively manufactured diversity, and that
the amount in controversy did not reach the required
threshold. Second, they contend that Land Holdings should
have been precluded from filing this foreclosure action in
the Virgin Islands because they had not complied with the
registration requirements of the Virgin Islands' Criminally
Influenced and Corrupt Organizations Act ("CICO"), 14
V.I.C. S 600 et seq. Third, they contend that summary
judgment was inappropriate because there were issues of
material fact as to whether Land Holdings had ever actually
been assigned the mortgage, and, finally, Appellants claim
that Land Holdings was precluded from foreclosing
Aquamarine's lease because they acquired the Mortgage
with actual knowledge of this lease interest. We will affirm.

I.

FACTS AND PROCEDURAL BACKGROUND

In 1986, Virgin Island Yacht Harbor, Inc. ("VIYH")
borrowed more than $15,000,000 from the Bank of Nova
Scotia, secured by a duly recorded first priority mortgage
on a parcel of real property in St. Thomas, U.S. Virgin
Islands. VIYH defaulted on the note and mortgage, and
negotiated a Deed in Lieu of Foreclosure Agreement with
the Bank, pursuant to which VIYH conveyed the Property to
Yacht Haven Holdings ("YHH"), a separate legal entity
created and wholly owned by the Bank. This transfer
constituted complete satisfaction of VIYH's debt to the
Bank.

3

After this transfer, the Bank sold and assigned the Mortgage on the Property to Land Holdings, Inc. for more than $3 million. This transfer was recorded. At the same time, YHH quitclaimed its fee ownership of the Property to Mega Holdings, Inc. for the price of $1. The result of these, and other, complicated transactions was that the Bank completely divested itself of all interests resulting from its dealings with VIYH, and Mega Holdings became the fee owner of the Property, which was encumbered by a valid first priority lien held by Land Holdings.

Mega Holdings subsequently defaulted on the Mortgage, now held by Land Holdings and secured by the Property. Land Holdings then sued Mega Holdings for: an adjudication that its lien on the Property was superior to all other claims; a decree that the Property was to be sold at public auction to satisfy the debt; and a judgment of foreclosure on the Property that would require all parties in possession of the Property to quit the premises in anticipation of the foreclosure sale. The initial lawsuit named 21 separate defendants, but by the time the District Court reached the summary judgment stage, only Mega Holdings, Aquamarine Tours, and Kathy Mullen d/b/a Regency Charter Services remained.

II.

DISCUSSION

A. Diversity Jurisdiction

Appellants contend that the assignment of the Mortgage from the Bank of Nova Scotia to Land Holdings was illegitimate or a sham, designed to collusively manufacture diversity jurisdiction in violation of federal law. We disagree. When evaluating the legitimacy of the assignment of a mortgage as it relates to diversity jurisdiction, courts must consider: the amount of interest the assignor (the Bank) retains in the foreclosure action; what legitimate business purpose motivated the assignment; and the amount of consideration given by the assignee for the assignment. See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d S 3639. Looking at these factors, the District

4

Court concluded that the assignment was legitimate. We agree.

Case law makes clear that the legitimacy of the transfer or assignment of a mortgage is a far more important factor in determining whether jurisdiction was collusively manufactured than is the motive of the parties for the assignment. As we have previously held, "[i]f the transferor retains no interest in the subject matter and the transfer is unconditional, the transfer is not improper or collusive even if motivated by a desire to create diversity." Nobel v. Morchesky, 697 F.2d 97, 101 (3d Cir. 1982). 1 Thus, parties can enter into a transaction to create diversity, so long as the transaction is legitimate.

Land Holdings was incorporated outside of the Virgin Islands (it is organized under the laws of the Isle of Man), and all Defendants/Appellants are citizens of the Virgin Islands. Thus diversity jurisdiction is proper unless the facts show that either the offshore organization of Land Holdings or the assignment of the Mortgage to it was a sham.2 Land Holdings was organized offshore for tax purposes, and this practice of utilizing offshore corporations is part of the "normal and customary practice" of its principals. Furthermore, Land Holdings paid more than three million dollars to the Bank of Nova Scotia for the assignment of the mortgage. It is also a customary business practice to sell defaulted loans at a discount. Additionally, the Bank did not retain any continuing interest in the Mortgage or in the

_____

1. Aquamarine relies on Kramer v. Carribean Mills, Inc., 394 U.S. 823 (1969) for the proposition that an assignment motivated by a desire to acquire diversity jurisdiction is invalid. However, Aquamarine ignores that in Kramer, the attorney who accepted the assignment of the claim paid $1 for it and agreed to pay back to the assignor 95% of any net recovery. Under these circumstances, the Court concluded that this was in fact no assignment at all, but rather, Kramer was paid a 5% fee "for the use of his name and his trouble in collecting." Id. at 528. As is discussed below, the assignment at issue in this case bears no resemblance to that in Kramer.

2. 128 U.S.C. S 1359 states "a district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

foreclosure proceedings. Finally, and perhaps most important, the Bank itself was a foreign corporation that could have brought this foreclosure action in federal court absent the assignment. Considering these facts, the District Court was correct to find valid diversity among the parties.

Finally, Aquamarine claims, in the alternative, that the amount in controversy requirement has not been met because the Deed in Lieu of Foreclosure discharged the entire mortgage debt and thus, Mega Holdings actually owes no money to Land Holdings. This is not true. The Deed in Lieu of Foreclosure discharged the debt as to VIYH, but the Property remained encumbered with the Mortgage, and Mega Holdings knew and does not dispute this. There is no other explanation for how Mega Holdings acquired a multi-million dollar parcel of land for $1. Because this foreclosure action concerns a multi-million dollar parcel of property, the amount in controversy requirement was easily met and Aquamarine's claim to the contrary is without merit. See, e.g., Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3d Cir. 1958). The District Court properly concluded that it had diversity jurisdiction to hear this foreclosure action.

B. The CICO Act

CICO forbids alien corporations from owning, purchasing or selling real property in the Virgin Islands, and from bringing suit in the Virgin Islands, until that corporation has complied with the registration requirements of the CICO Act. 14 V.I.C. S 611(e). Land Holdings is an "alien corporation" within the meaning of this Act. 14 V.I.C. S 604(a). Aquamarine argues that Land Holdings is barred from filing this action because it has not registered pursuant to CICO. The District Court found that Land Holdings did comply with the foreign corporation registration requirements found at 13 V.I.C. S 401(a) and that, because this statute requires a corporation to provide to the Lieutenant Governor information that is substantially similar to that required by the CICO statute, compliance with the former brought Land Holdings into substantial compliance with the later. Thus, the District Court concluded, Land Holdings could proceed with its foreclosure action. We agree.

6

The CICO Act requires alien corporations to file with the Lieutenant Governor a sworn report setting forth the name of the corporation, the address of the corporation, the names and addresses of each officer and director of the corporation, the name of the registered agent and the address of the registered agent and registered office of the corporation, and the signatures of the corporate president and other officers attesting to the accuracy of the above information. 14 V.I.C. S 611(c). Similarly, 13 V.I.C. S 401 requires foreign corporations desiring to do business in the Virgin Islands to file with the Lieutenant Governor a certified copy of its charter or certificate of incorporation, a certificate designating the corporation's agent for service of process, and a sworn statement of the assets, liabilities and capital stock of the corporation.

The purpose of the CICO Act, as stated at 14 V.I.C.S 601, is to "curtail criminal activity . . . in the . .. Virgin Islands." The Virgin Islands legislature found that alien corporations, through the use of fictitious names, may be used for illegitimate purposes. 14 V.I.C. S 603(c). To crack down on these illegitimate alien corporations, the Act, among other things, imposes the reporting requirements detailed above. Because 13 V.I.C. S 401 imposes substantially similar reporting requirements on foreign corporations doing business in the Virgin Islands, compliance with the Title 13 requirements achieves the goals of the CICO Act. 3 Land Holdings has complied with Title 13. Thus, it is in substantial compliance with the CICO Act and can maintain this foreclosure action in the District Court for the Virgin Islands.4 We will affirm. 5

_____

3. The main registration requirement that the CICO Act, 14 V.I.C. S 611(c), imposes on foreign corporations that is not required under 13 V.I.C. S 401(a), is that alien corporations must under CICO provide the Lieutenant Governor with the address of a "registered office." 14 V.I.C. S 611(c)(4). Because Land Holdings provided an address for its business agent in the Virgin Islands, and there is no suggestion that it attempted to conceal the location from which it operated in the Virgin Islands, we think that the District Court did not err in concluding that Land Holdings substantially complied with the CICO Act for purposes of proceeding with this case.

4. We do not hold that a corporation's compliance with the registration requirements of either the Virgin Islands CICO Act, 14 V.I.C. S 611(c), or

7

III.

CONCLUSION

In sum, and for the above reasons, we will affirm the
District Court's grant of summary judgment in favor of
Land Holdings.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

with the registration requirements for foreign corporations found at 13
V.I.C. S 401(a), always constitutes substantial compliance with the other.
We also note that our holding does not preclude the Government of the
Virgin Islands from pursuing an action to require Land Holdings to
comply with the registration requirements of the CICO Act.

5. Appellants' raise two other issues on appeal. First they contend that
"it [is] a disputed fact whether the Bank retained the mortgage that it
purported to assign to Land Holdings." They argue that "[i]f [the Bank]
transferred the Mortgage to YHH in 1997, and then assigned that same
Mortgage to Land Holdings in 1998, they [the Bank] assigned nothing to
the Plaintiff, and Plaintiff received nothing by way of the assignment,
because an assignee takes only what his assignor conveys, and nothing
more." Following this reasoning, they argue that if the Mortgage was not
assigned to Land Holdings, it has no foreclosure claim to bring and this
action should be dismissed. Next they argue that Land Holdings was
precluded from foreclosing Aquamarine's lease because Land Holdings
acquired the Mortgage with actual knowledge of this lease interest. These
arguments are without merit.

8