**Herbert THOMPSON, James Pinder, Dorset Limited, and Sherpam Investments Limited, Plaintiffs,**

v.

**DELOITTE & TOUCHE LLP, Defendant.**

**No. 4:07–cv–00067.**

United States District Court, S.D. Iowa, Central Division.

Aug. 27, 2007.

John F. Sprole, Des Moines, IA, for Plaintiffs.

Nancy E. Brasel; Lawrence M. Shapiro, Greene Espel PLLP, Minneapolis, MN, Hayward L. Draper, Nyemaster Goode Voigts West Hansell & O'Brien, PC, Des Moines, IA, for Defendant.

## ORDER ON MOTION TO DISMISS

PRATT, Chief Judge.

Before the Court is Defendant, Deloitte & Touche LLP's ("Deloitte"), Motion to Dismiss, filed on June 29, 2007. Clerk's No. 4. Plaintiffs, Herbert Thompson ("Thompson"), James Pinder ("Pinder"), Dorset Limited ("Dorset Ltd."), and Sherpam Investments Limited ("Sherpam Ltd.") (collectively "Plaintiffs"), filed a resistance to the motion on July 17, 2007. Clerk's No. 10. Deloitte filed a reply to Plaintiffs' resistance on July 27, 2007. Clerk's No. 15. Both parties requested oral argument, however, the Court finds that such argument would not materially aid in the resolution of this motion. Accordingly, the matter is fully submitted.

## I. FACTS

This case stems from an alleged faulty appraisal provided by Deloitte. On February 16, 2007, Plaintiffs filed this instant action against Deloitte alleging breach of contract, "violation of independence," and negligence. Clerk's No. 1. According to the Complaint, on or about June 1, 2001, Plaintiffs, as principle shareholders of Star Insurance Company (Bahamas) Limited ("Star"), entered Star into an "oral agreement pursuant to which the Des Moines, Iowa office of Deloitte would provide an appraisal of Star as of December 31, 2000." Compl. at 1. On July 30, 2001, Deloitte issued an appraisal of Star. *Id.* Plaintiffs, relying on Deloitte's appraisal of Star, entered Star into a written agreement with Family Guardian Insurance Company Limited ("Family Guardian") (the "Merger Agreement") on November 30, 2001, that effectively merged the two companies. *Id.* According to Plaintiffs, after signing the Merger Agreement, the liabilities on Star's balance sheet as of December 31, 2000 were found to be incorrect and were adjusted upward to reflect this error, thereby causing the sale price to be adjusted downward by the amount of liability overlooked by Deloitte in its appraisal. *See id.* at 2, 6. Plaintiffs state that in entering into the Merger Agreement, they relied on Deloitte's appraisal of Star to their detriment. Plaintiffs claim their decision to sign the Merger Agreement was based on two specific provisions in Deloitte's appraisal: provision 3.02, captioned "Merger Closing Price," and provision 4.05, captioned "No Undisclosed Liabilities." *Id.* at 2.

To establish federal jurisdiction, Plaintiffs allege that "[t]he Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between corporate citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs." *Id.* Specifically, the Complaint states that Deloitte "is a subsidiary of Deloitte & Touche USA LLP," which is in turn, "a member firm of Deloitte & Touche Tohmatsu, a Swiss Verein," and that Plaintiffs Thompson and Pinder "are both citizens of the Bahamas," Plaintiff Dorset Ltd. "is a corporate entity of Bermuda," and Plaintiff Sherpam Ltd. is "a corporate entity of the Bahamas." *Id.*

## II. STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the federal court's subject matter jurisdiction. "Federal courts are courts of

limited jurisdiction. They possess only that power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). The courts presume that a suit lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Id.; Sierra Club v. U.S. Army Corp. of Eng'rs,* 446 F.3d 808, 815 (8th Cir.2006) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Thus, because Plaintiffs are asserting jurisdiction, they shoulder the burden of proving subject matter jurisdiction by a preponderance of the evidence. *See Blakemore v. Mo. Pac. R. Co.,* 789 F.2d 616, 618 (8th Cir.1986) (stating that a party attempting to establish federal jurisdiction bears the burden of proof if diversity of citizenship is challenged).

 To properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Deloitte must successfully challenge Plaintiffs' Complaint "on its face or the factual truthfulness of its averments." *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). Facial challenges are limited to analyzing the face of the complaint. *Biscanin v. Merrill Lynch & Co., Inc.,* 407 F.3d 905, 907 (8th Cir.2005). Under a facial challenge, each factual allegation concerning jurisdiction is presumed to be true. *Titus,* 4 F.3d at 593. Thus, the moving party's motion can be "successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* Factual challenges invoke facts other than those pled in the complaint. *Osborn v. United States,* 918 F.2d 724, 729 n. 6 (8th Cir.1990). If a party mounts a factual challenge, "the Court may look outside the pleadings to determine whether jurisdiction exists, and the nonmoving party loses the benefit of favorable inferences from its factual statements." *Dolls, Inc. v. City of Coralville,* 425 F.Supp.2d 958, 970 (S.D.Iowa 2006). Here, Deloitte's motion to dismiss pursuant to Rule 12(b)(1) is based on a factual challenge.

## III. LAW AND ANALYSIS

Deloitte presents two arguments in support of its motion to dismiss. First, Deloitte argues that complete diversity of citizenship is lacking because Deloitte is "stateless" for jurisdictional purposes. Next, Deloitte contends that complete diversity is destroyed because there are aliens on both sides of the controversy. The Court will address each argument in turn.

### A. Diversity of Citizenship Jurisdiction

 The Constitution requires only minimal diversity, that is, diversity of citizenship between any two parties on opposite sides of an action.[1] *See State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Congress, however, did not grant the district courts the full measure of diversity jurisdiction permitted by the Constitution.[2] *Saadeh v. Farouki,* 107 F.3d 52, 54 (D.C.Cir.1997). The Supreme Court has interpreted the diversity statute to require "complete diversity" of citizenship. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 186, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)

---

**1.** Article III of the Constitution provides, in pertinent part, that "[t]he judicial Power shall extend to ... Controversies ... between Citizens of different States...." U.S. Const., art III, § 2, cl. 1.

**2.** Congress first authorized the federal courts to exercise diversity jurisdiction in the Judiciary Act of 1789. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

(citing *Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806)). Complete diversity, as opposed to minimal diversity, means that the parties on one side are different than *each of* the parties on the other side. *See Strawbridge,* 7 U.S. at 267, 3 Cranch 267. In its current form, the diversity statute provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds ... $75,000, exclusive of interest and costs, and is between—
>
> (1) Citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
>
> For the purposes of this section ... an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

28 U.S.C. § 1332(a). The current diversity statute retains the requirement of complete diversity. *Saadeh,* 107 F.3d at 54–55.

### B. The "Stateless" Partner

■ As noted above, Plaintiffs assert the existence of subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[3] Deloitte, however, states that complete diversity is absent in this case because at least one Deloitte partner is "stateless" for diversity

purposes. Deloitte is a limited liability partnership[4] consisting, in pertinent part, of partners who are citizens of the United States, about twenty-nine partners who are aliens working and residing in the United States, and at least one partner who, although a United States citizen, is domiciled in Asia and has no domicile in the United States. Deloitte states that as a limited liability partnership, its citizenship is determined by the citizenship of all of its partners. *See, e.g., Carden,* 494 U.S. at 195–96, 110 S.Ct. 1015 ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members, the several persons composing such association, each of its members.") (internal citations and quotations omitted); *Buckley v. Control Data Corp.,* 923 F.2d 96, 97 (8th Cir.1991) (explaining that citizenship of a limited partnership is the citizenship of each of its partners); *Schindler v. Seiler,* No. 05–C–0521, 2006 U.S. Dist. LEXIS 11750, at *1 (W.D.Wis. Mar. 20, 2006) (stating that limited liability partnerships have the same citizenship as each of their partners). Plaintiffs agree that as a limited liability partnership, Deloitte's citizenship is determined by the citizenship of its partners. Plaintiffs, however, disagree that a stateless partner renders Deloitte stateless.

■ In *Newman–Green, Inc. v. Alfonzo–Larrain,* the Supreme Court explained that "[i]n order to be a citizen of a State within the meaning of the diversity statute, a natural person must be both a citizen of the United States *and* be domiciled within the State." 490 U.S. 826, 828, 109 S.Ct.

---

**3.** It appears that Plaintiffs are attempting to satisfy the diversity of citizenship requirement under Section 1332, subsection (a)(2).

**4.** Plaintiffs' Complaint characterizes Deloitte as a "corporate citizen." *See* Compl. at 2.

However, this characterization is not accurate because Deloitte is a limited liability partnership, a business organization that is, by definition, unincorporated and therefore, not a "corporation."

2218, 104 L.Ed.2d 893 (1989). Thus, if a United States citizen has no domicile in the United States, he is "stateless" for purposes of diversity jurisdiction. *Id.* This is so because the "stateless" person is not a "citizen of a State"[5] or a "citizen or subject of a foreign state." Thus, the presence of such a "stateless" party on one side of a controversy would necessarily defeat diversity because the "stateless" party is neither a citizen of a State nor a subject of a foreign state. *See id.* at 828–29, 109 S.Ct. 2218; *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir.1990) ("[T]he language of 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity.") (internal citation omitted). Here, Deloitte contends that one of its partners, John R. Cochrane (partner since 1979), is a citizen of the United States who is domiciled abroad. Specifically, Cochrane declares that he has "[a]t all times from April 1996 to the present ... lived and worked in Asia" and presently intends to "continue living and working in Asia indefinitely" and does not "have a present intention of ... returning to the United States." *See* John Randal Cochrane Aff. at ¶¶ 3, 9. Cochrane further states that he does not own or lease real property in the United States (except for a summer lake cottage used occasionally as vacation property), is not registered to vote in the United States, and does not have a resident status for state income tax purposes. *See id.* ¶¶ 6–8. Accordingly, Deloitte claims that because Cochrane is "stateless," Deloitte too, is "stateless" for purposes of diversity jurisdiction.

Plaintiffs, however, contend that Deloitte's theory "establishes a new entity previously unknown in the law—the state-less partnership—that would come into existence any time a United States citizen who is a member of a partnership establishes a domicile in a foreign country." Pls.' Resistance at 2. According to Plaintiffs, "it makes no sense to conclude that the partnership as a whole is a stateless entity [when] the citizenship of the partnership is capable of being determined by reference to the state citizenship of those partners who are not themselves stateless." *Id.* at 3. Stated differently, it would be illogical to conclude that the stateless partner would "somehow wipe[ ] out or trump[ ] the citizenship of the rest, rendering the entire partnership jurisdictionally stateless." *Id.* Plaintiffs maintain, without any legal support, that the better way to address the stateless partner is to consider him "as [a] jurisdictional 'zero[ ],' neither adding to nor subtracting from the citizenship of the partnership as a whole." *Id.* at 4.

It appears the Eighth Circuit has not specifically addressed how a stateless partner would affect the citizenship of a limited liability partnership for diversity purposes. However, in applying the well established premise that a limited liability partnership has the citizenship of all of its partners, it would necessarily follow that one stateless partner would render the partnership to be stateless as well. *See Cresswell*, 922 F.2d at 69 (explaining that a suit against a partnership could not be premised on diversity if foreign-residing United States citizen partners are domiciled abroad since a partnership is deemed to take on the citizenship of each of its partners); *ConnectU LLC v. Zuckerberg*, 482 F.Supp.2d 3, 27 (D.Mass.2007) (stating that a limited liability company with no members effectively rendered it stateless). Plaintiffs, however, would have the Court ignore the

---

**5.** "States," for purposes of diversity jurisdiction includes "the Territories, the District of Columbia, and the Commonwealth of Puerto Rico." 28 U.S.C. § 1332(e).

stateless partner completely in determining Deloitte's citizenship. The Court cannot accept such a proposal. *See Carden*, 494 U.S. at 192, 110 S.Ct. 1015 (explaining that an artificial entity cannot invoke citizenship of some, but not all, of its members).

■■■ The realm of federal jurisdiction is controlled by Congress and the Constitution, not the courts. *See id.* at 197, 110 S.Ct. 1015. Indeed, the Supreme Court itself noted that holding a limited partnership to be a citizen of every state in which one of its partners is a citizen "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." *Id.* at 196, 110 S.Ct. 1015. Nevertheless, in following precedent, the Supreme Court stated:

> The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particu-

larly unwelcome at the threshold stage of determining whether a court has jurisdiction.

*Id.* at 197, 110 S.Ct. 1015. Likewise, this Court must yield to precedent, and until Congress addresses business entities with foreign domiciled partners and/or members, this Court can reach no other result.[6]

Plaintiffs further argue that even if Cochrane must be considered jurisdictionally, he should be disregarded in this instance because he is not a "real party in interest," since only the partners who worked in the United States could have substantially contributed to the alleged faulty appraisal at issue in this litigation. This argument, too, must fail. In *Carden*, the Supreme Court expressly rejected an analogous argument that the citizenship of a limited partnership should be determined solely by reference to the citizenship of its general partners, not limited partners, because only the general partners managed the assets and were subject to the risk of liability. *See id.* at 192, 110 S.Ct. 1015. In rejecting the argument, the *Carden* court reiterated, "[w]e have never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members."[7] *Id.* Accordingly, because Deloitte is a limited liability partnership,

---

6. Plaintiffs may be correct in stating that it would be troubling to allow Deloitte to effectively immunize itself from diversity jurisdiction simply by organizing itself as limited liability partnership with a foreign domiciled United States citizen partner. However, the rule cuts both ways because Deloitte is now judicially estopped from advancing a contrary argument in state court. *See Reisman v. KPMG Peat Marwick LLP*, 965 F.Supp. 165, 177 n. 16 (D.Mass.1997) (citing *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir.1987)).

7. Plaintiffs cite *Navarro Savings Association v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), for the proposition that the stateless partner is not a "real and substantial" party in interest and should, therefore, be disregarded in the Court's diversity determination. However, as the Supreme Court noted in *Carden, Navarro* "did not involve the question whether a party that is an artificial entity other than a corporation can be considered a 'citizen' of a State, but the quite separate question of whether parties that were undoubted 'citizens' ... were the real parties to the controversy." *Carden*, 494 U.S. at 191, 110 S.Ct. 1015.

Cochrane's State citizenship, or lack thereof, must be considered for purposes of diversity jurisdiction. Moreover, as discussed more fully below, even if Cochrane is excluded jurisdictionally, Plaintiffs still cannot establish diversity jurisdiction.

### C. The Alien Partners

■ Deloitte further argues that, in addition to being stateless, diversity jurisdiction is lacking in another important respect. Deloitte states that at the time this case was filed, it had "at least 29 partners who [were] not United States citizens who [were] working and residing in the United States." Gary Bottfeld Aff. ¶ 2.[8] Deloitte, therefore, contends that diversity jurisdiction cannot be maintained because there are aliens on opposite sides of the action, i.e., alien Plaintiffs (citizens of Bahamas and Bermuda) verses alien Defendant (twenty-nine alien partners). *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 825 n. 2, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) (stating that complete diversity is required of aliens even if they are citizens of different countries); *see, e.g., Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir.2002) (noting that when a citizen of a state is present on one side of the litigation only, and non-resident aliens are present on both sides of the litigation, diversity is lacking under subsection (a)(2)); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir.1993) (noting that courts have rejected jurisdiction in suits where "one side of the litigation had only foreign parties and the other had a mixture of foreign and domestic parties," because such a case does not fit within any of the jurisdictional pigeonholes); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir.1989) (explaining that the presence of at least one alien on both sides of an action precludes diversity jurisdiction).[9]

■ Plaintiffs, however, argue that the twenty-nine alien partners ("alien partners") should be considered citizens of the State of their domicile under section 1332(a).[10] The relevant portion of section 1332, however, only applies to "aliens admitted to the United States for permanent residence." The Bottfeld affidavit only states that the alien partners are "working and residing in the United States." Bottfeld Aff. ¶ 3. Thus, there is no indication in the record that the alien partners are permanent residents of the United States, much less domiciled in the states in which they are "working and residing."[11] Here,

8. Gary Bottfeld is the Director of International Human Resources and National Immigration Services of Deloitte Services LP, an affiliate of Deloitte that provides certain human resources support to Deloitte. Bottfeld Aff. ¶ 1.

9. Under 28 U.S.C. § 1332(a)(3), however, the presence of aliens on both sides of the action does not preclude diversity jurisdiction if the aliens are joined with diverse citizens, that is, an alien and a citizen of State A vs. an alien and a citizen of State B. *See, e.g., Dresser Indus., Inc. v. Underwriters at Llyod's of London*, 106 F.3d 494, 497–98 (3rd Cir.1997). However, subsection 1332(a)(3) does not apply in this case because Plaintiffs are all aliens and are not joined with diverse citizens.

10. The relevant portion of section 1332 provides: "For the purposes of this section ... an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a).

11. On July 30, 2007, Deloitte filed a motion for sanctions in this case. Clerk's No. 16. An e-mail correspondence from Deloitte's counsel to Plaintiffs' counsel, submitted in support of its request for sanctions, indicates that Deloitte has approximately fifty foreign national partners working in the United States as permanent residents. *See* Clerk's No. 16.2, Ex. B. It appears, then, that the twenty-nine alien partners are likely to be permanent residents.

Plaintiffs offer nothing to support their contention that the alien partners are permanent residents of the United States. Regardless, even if Plaintiffs could demonstrate that the alien partners were, in fact, permanent residents, section 1332(a) still would not confer jurisdiction in this case because it does not extend diversity jurisdiction between permanent resident aliens and aliens.

"The Supreme Court has never addressed the scope of the complete diversity rule in cases involving alien parties." *Saadeh*, 107 F.3d at 55. Prior to 1988, it was settled law that "the diversity statute did not confer jurisdiction over a lawsuit involving an alien on one side, and an alien and a citizen on the other side." *See id.* (cases cited therein). In 1988, Congress amended the diversity statute to include the last sentence (noted in footnote 10). *Id.* Under the amendment, diversity of citizenship no longer existed in an action between a citizen of State A and an alien admitted to the United States for permanent residence who resides in State A. *Id.* Read literally, however, the amended statute would appear to partially abrogate "the rule of complete diversity by permitting a non-resident alien and a resident alien to be present on opposite sides of the law suit." *Id.* The Eighth Circuit has not had occasion to address this issue; however, circuits have sharply disagreed as to whether the 1988 amendment created diversity jurisdiction in suits in which a permanent resident alien appears opposite another alien. *Compare Singh v. Daimler–Benz AG*, 9 F.3d 303 (3d Cir.1993) (holding that resident alien can properly sue nonresident alien under the 1988 amendment), *with Saadeh*, 107 F.3d at 52 (concluding that the amendment did not expand diversity jurisdiction to encompass suits in which a permanent resident alien appears opposite another alien).

Here, Plaintiffs urge the Court to adopt *Singh*. In *Singh*, plaintiff, a citizen of India, admitted to the United States for permanent residence and domiciled in Virginia, brought a products liability action against defendants, a German corporation (German citizen) and its American distributor (citizen of Delaware and New Jersey). 9 F.3d at 304. Singh argued that the court lacked jurisdiction because the 1988 amendment was "intended only to bar suits where a permanent resident alien sues a citizen of the same state, and did not establish a new definition of citizenship for permanent resident aliens in all cases." *Id.* at 306. Singh contended that applying the plain language of the amended statute was "contrary to legislative intent" to limit diversity jurisdiction and "would lead to an unconstitutional result." *Id.* The court explained, however, that because the statutory language was plain, legislative history was not relevant. Nonetheless, the court briefly addressed the legislative history to provide some insight to the court's statutory construction. *Id.* The legislative history recounts:

28 U.S.C. 1332(a)(2) currently gives the district court diversity jurisdiction over actions between citizens of a State and citizens or subjects of a foreign state. Section 1332(a)(3) covers actions between citizens of different States in which citizens or subjects of a foreign State are parties. Diversity jurisdiction exists under these provisions even though the alien may have been admitted to the United States as a permanent resident. Review of immigration statistics indicates that a large number of persons falls within this category.

There seems to be no reason why actions involving persons who are permanent residents of the United States should be heard by Federal courts merely because one of them remains a citizen or subject of a foreign state or

has not yet become a citizen of the United States.

*Id.* at 308 (quoting Report of the Judicial Conference Committee on Federal–State Jurisdiction 6–7 (Sept.1988)). The Senate's consideration of the resident alien provision "focused on the incongruity of permitting a permanent resident alien living next door to a citizen to invoke federal jurisdiction for a dispute between them while denying a citizen living across the street the same privilege." *Id.* at 309 (citing 134 Cong. Rec. 31,055 (1988)).

Although the *Singh* court acknowledged that there was "ample basis" in the legislative history to "support Singh's view that the reduction of diversity caseload was a factor in the proposed change as to the treatment of permanent resident aliens[,]" "there [was] also nothing to support Singh's view that the entire 1988 Act was characterized by a 'clarity of purpose' to reduce diversity jurisdiction." *Id.* at 308, 309. The *Singh* court recognized that Congress may not have intended to enlarge diversity jurisdiction, "but the possible unintended effect of permitting a permanent resident alien to invoke diversity jurisdiction when the party could not have done so before the amendment [was] not sufficient reason for [the court] to ... limit the statutory language." *Id.* at 309. Thus, the *Singh* court applied the plain language of the statute and held that for diversity purposes, permanent residents would be considered citizens of their State of domicile. As a result, a resident alien was able to maintain a cause of action against a non-resident alien in federal court.

Notwithstanding the rationale in *Singh,* the *Saadeh* court held to the contrary. In *Saadeh,* the plaintiff, a non-resident alien domiciled in Greece, brought a breach of contract action against defendant, a permanent resident alien domiciled in Mary-

land (citizen of Jordan). 107 F.3d at 53, 55. In determining the citizenship of the defendant for diversity purposes, the court looked to the 1988 legislative history. The *Saadeh* court acknowledged that generally, if the "language is plain on its face, courts do not ordinarily resort to legislative history." *Id.* at 57. However, the court noted that there were exceptions. "For example, the Supreme Court has observed that 'in rare cases, the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling.' " *Id.* at 58 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Thus, the *Saadeh* court explained that "[l]ooking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention...." *Id.* (quoting *Public Citizen v. U.S. Dep't of Justice,* 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) quoting *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928)). Moreover, " 'where an otherwise acceptable construction of a statute would raise serious constitutional problems,' a court should 'construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.' " *Id.* (quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988)).

The *Saadeh* court noted that a literal reading of the amendment "would produce an odd and potentially unconstitutional result [as][i]t would both partially abrogate the longstanding rule of complete diversity, and create federal diversity jurisdiction over a lawsuit brought by one alien against another alien, without a citizen of a state

on either side of litigation." *Id.* The court explained that a section-by-section analysis of the Congressional Record reveals Congress' "intent to reduce diversity jurisdiction through the alienage provision." *Id.* at 59. The *Saadeh* court concluded that "Congress intended to contract diversity jurisdiction through the 1988 amendment to § 1332(a), not to expand it by abrogating the longstanding rule that complete diversity is destroyed in lawsuits between aliens." *Id.* at 60. The court reasoned that it would be "illogical" to conclude that Congress "intended to eliminate diversity jurisdiction in cases between a citizen and an alien permanently residing in the same state, but simultaneously intended to expand diversity jurisdiction in cases between an alien permanently residing in one state and an alien permanently residing in another state." *Id.* Notably, the *Saadeh* court pointed out that, "[g]iven the effect of a literal reading of the 1988 amendment on well-settled law regarding both minimal and complete diversity in suits involving aliens, a description of the amendment as a 'modest' or 'noncontroversial' revision to diversity jurisdiction would have hardly fit." *Id.* at 61.

After carefully considering the rationales set forth in *Singh* and *Saadeh,* the Court finds *Saadeh* to be more persuasive. As the legislative record of the 1988 amendment reveals, the intent of Congress in amending the diversity statute was to "eliminate the ability of permanent resident aliens to sue in federal court on all manner of claims using the alienage jurisdiction, when the case was more properly viewed as a local matter analogous to a case between citizens of the same state." *Karazanos v. Madison Two Assocs.,* 147 F.3d 624, 627 (7th Cir.1998); *accord Marcus v. Five J Jewelers Precious Metals Indus. Ltd.,* 111 F.Supp.2d 445, 448 (S.D.N.Y.2000) (concluding that, "adhering

strictly to the statutory language would ... produce an absurd result" given that " 'to find subject matter jurisdiction, the Court [would have to] conclude that Congress abandoned the rule of complete diversity, enunciated nearly two hundred years ago in *Strawbridge* and regularly applied since to, *inter alia,* actions with aliens on both sides, but did so without comment.' ") (citing *Lloyds Bank PLC v. Norkin,* 817 F.Supp. 414, 418 (S.D.N.Y. 1993)). The Court concludes that the 1988 amendment did not expand diversity jurisdiction to cover suits involving permanent resident aliens appearing opposite aliens. *See Gall v. Topcall Int'l, A. G.,* No. 04–cv–432, 2005 WL 664502, at *5 n. 9, 2005 U.S. Dist. LEXIS 4421, at *18 n. 9 (E.D.Pa. Mar. 21, 2005) ("There is general agreement among scholarly commentators 'that any interpretation of the permanent resident alien amendment that would provide diversity jurisdiction for a case solely involving aliens would be unconstitutional.' ") (citations omitted).

This conclusion is in line with several other district courts that have found that the 1988 amendment did not confer diversity jurisdiction over suits involving only aliens. *See, e.g., id.* at 2005 WL 664502, *1, 6, 2005 U.S. Dist. LEXIS 4421, *1–2, 23 (dismissing suit between Austrian company and citizen of the Netherlands, even if Dutch citizen could be considered a permanent resident alien); *Chavez–Organista v. Vanos,* 208 F.Supp.2d 174 (D.P.R.2002) (dismissing suit between nonresident alien and permanent resident aliens); *Matsuda v. Wada,* 128 F.Supp.2d 659 (D.Haw.2000) (stating diversity was lacking in case between Japanese citizen and Japanese citizen who was also a permanent resident alien); *Banci v. Wright,* 44 F.Supp.2d 1272 (S.D.Fla.1999) (dismissing suit between two permanent resident aliens); *Ozawa v. Miyata,* No. 96–C–7500, 1997 WL 779047, at *1, 1997 U.S. Dist. LEXIS 19988, at *1

(N.D.Ill. Dec. 12, 1997) (dismissing suit between Japanese nonresident aliens and Japanese permanent resident aliens). Accordingly, in this case, diversity of citizenship is lacking. As explained above, even if Plaintiffs were able to demonstrate that the alien partners are permanent residents, domiciled in the states where they are "working and residing," complete diversity jurisdiction still could not be maintained because aliens are present on both sides of the controversy. *See Saadeh,* 107 F.3d at 52 (concluding that the amendment did not expand diversity jurisdiction to encompass suits in which a permanent resident alien appears opposite another alien).

## IV. CONCLUSION

For the reasons stated above, Deloitte's Motion to Dismiss (Clerk's No. 4) is GRANTED.

IT IS SO ORDERED.